Kathie ELLIOTT, Respondent,

v.

**KANSAS CITY, MISSOURI, SCHOOL DISTRICT, Appellant.**

No. WD 59940.

Missouri Court of Appeals, Western District.

March 12, 2002.

Elaine M. Eppright, Kansas City, for Respondent.

Charles R. Brown, Carla M. Fields, Kansas City, for Appellant.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

The Kansas City, Missouri, School District ("District") appeals from the Labor and Industrial Relations Commission's ("Commission") final award affirming the Division of Workers' Compensation's ("Division") award of 75 percent permanent partial disability to the body as a whole to Kathie Elliott as a result of an injury sustained by Elliott on September 17, 1998. The District raises three points on appeal. The District's first point on appeal is that the Commission erred in holding that the September 17, 1998 incident caused a permanent partial disability of 75 percent to the body as a whole, in that in rendering its decision the Commission determined that it had "no choice" but to find that the accident caused a permanent partial disability of 75 percent to the body as a whole and that "[t]o find otherwise would require us to substitute our judgment for that of a medical expert." The District's second point on appeal is that the Commission erred in affirming the decision of the Division because factual findings concerning the extent and percent of disability are to be determined by the Commission, in that the Division's decision was improperly based on the law governing the determination of medical causation. The District's third point on appeal is that the Commission erred in awarding permanent partial disability of 75 percent to the body as a whole, in that the Commission failed to consider extensive evidence unfavorable to the award.

We reverse and remand.

### Facts

On September 17, 1998, an eighth grade student at Central Middle School in the District ran by Kathie Elliott's classroom, where Elliott was alone during a planning period, and threw an M–80 into the room. The M–80 exploded in front of Elliott,

about fifteen feet away from her. Elliott was employed as a school teacher for the District at the time.

On the day of the incident, Elliott drove to an occupational facility for an evaluation authorized by the District. Elliott began psychotherapy with Dr. David Miller on December 17, 1998, and continued one to two times per week until April 24, 1999. Dr. Miller initially diagnosed Elliott with post-traumatic stress disorder, indicating she was completely unable to work. Over the next five months, Dr. Miller performed an MMPI–2, worked with Elliott on exercises to reduce her panic attacks, and discussed ways of helping her with her startle response. Elliott testified that Dr. Miller's treatment helped her.

Dr. Miller's records indicated that Elliott improved in all areas to the point where she was released to return to the classroom on April 5, 1999. On her April 24, 1999 visit to Dr. Miller, Elliott expressed satisfaction with her new school location, indicated an absence of her former hyper-vigilance for the two weeks prior to the April 24th visit, and acknowledged an absence of nightmares. Elliott was able to maintain attention and concentration to teach effectively. Dr. Miller assessed Elliott as able to teach and function effectively. Elliott was discharged from Dr. Miller's care with no further appointments anticipated.

Elliott began teaching at Pinkerton Elementary School on April 5, 1999, and worked until the end of that school year in June. Elliott returned to Pinkerton Elementary School after summer break in late August 1999, and completed the full 1999–2000 school year. Elliott felt she was an effective teacher. Her absenteeism totaled not more than ten days.

On June 25, 1999, Elliott underwent a psychiatric evaluation to obtain a rating on her own behalf for use in the present litigation as directed by her attorney, Frank Eppright. Dr. David Windsor performed the evaluation for Elliott's evidential use at trial. Dr. Windsor found Elliott competent to attend to her basic personal needs, such as cooking, cleaning, shopping and driving. Additionally, Dr. Windsor found Elliott's speech patterns spontaneous, coherent, relevant, and to the point. He also found Elliott to be bright and articulate. Her mental activity was brisk but a little inefficient. According to Dr. Windsor, he could detect no evidence of any thinking disturbance. Elliott was oriented in all three spheres. Her memory functions for immediate recall, recent memory, intermediate memory, and remote memory were "too" good. Elliott's intellectual resources were considered above average. Dr. Windsor diagnosed Elliott with post-traumatic stress disorder, "which is beginning to become chronic." He also noted that Elliott "would be also considered to have a Major Depressive Disorder and apparently Agoraphobia with Panic Attacks," which did not seem to be getting any better. Dr. Windsor then concluded his assessment by rating Elliott's psychiatric disability at 75 percent, noting that Elliott "is not functioning at anywhere near the level she was before, and I think she is barely functioning at the present time."

Elliott's claim was tried before the Division of Workers' Compensation on June 6, 2000. The sole issue before the Division was the nature and extent of Elliott's alleged mental injury as a result of the September 17, 1998 incident.

Joyce White, principal of Pinkerton Elementary School, testified that Elliott called her before the September 17, 1998 incident, requesting a transfer from Central Middle School to Pinkerton Elementary School because Elliott preferred the elementary school setting and Elliott was

aware that Ms. White ran a "tight ship." Ms. White recalled that Elliott requested a transfer before the start of the 1998 school year.

On January 4, 1999, Elliott was hospitalized for diabetes at Menorah Medical Center. During that admission, on January 5, 1999, Dr. Stephen Segraves, a psychiatrist, saw Elliott. His notes indicated that Elliott had a history of treatment for multiple stresses over the years associated with depressive symptoms. Her antidepressant medications, as prescribed by prior primary care treating physicians, included Paxil, Zoloft, Prozac and Elavil. Aside from her school environment, Elliott's other stresses included her husband's ex-wife and her parents disowning her.

Other stresses requiring Elliott to use antidepressants resulted from a son's admission to a psychiatric institute, family relationship issues, pre-menopausal mood swings and menopause, divorce, a physical leg jerking problem, and anxiety about her elevated blood sugar, which, according to her medical records, first occurred as far back as 1994. Elliott indicated that a combination of family, job and marriage caused her depression, anxiety, and need for antidepressants. Elliott was diagnosed with a depressive disorder on August 18, 1998, before the M–80 incident.

At the hearing, Elliott's physician was still prescribing her antidepressant and anti-anxiety medication.

Administrative Law Judge R. Carl Mueller, Jr., of the Division, entered his award on July 19, 2000, finding that Elliott suffers from a 75 percent permanent partial disability to the body as a whole, and that she is entitled to 300 weeks of compensation for her permanent partial disability, payable in weekly installments through January 4, 2005, including 61 weeks of accrued permanent partial disability compensation, i.e., $17,978.53, from April 6, 1999 through the June 6, 2000 hearing date. The District appealed the award to the Commission, which affirmed the award by a vote of 2–0 on March 27, 2001. This appeal follows.

## Standard of Review

Section 287.495.1 [1] provides that on appeal of the Commission's award, this court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

In *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995), we stated the applicable standard of review to be as follows:

The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If

---

1. All statutory references are to RSMo 2000.

not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission and, if those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if any are given, why the Commission differed with those findings. Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

■ Also, where, as here, the Commission's award attaches and incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award. *Rana v. Landstar TLC*, 46 S.W.3d 614, 621 (Mo. App. W.D.2001).

## Point I

The District's first point on appeal is that the Commission erred in holding that the September 17, 1998 incident caused a permanent partial disability of 75 percent to the body as a whole, because the Commission is not bound by the percentage of disability estimated by medical experts and the Commission's decision is subject to review by this court pursuant to § 287.495, in that in rendering its decision the Commission determined that it had "no choice" but to find that the accident caused a permanent partial disability of 75 percent to the body as a whole and that "[t]o find otherwise would require us to substitute our judgment for that of a medical expert."

In its final award affirming the Division's award, the Commission stated as follows:

> Employer/insured also argue that the administrative law judge erred in awarding claimant benefits. We disagree. The administrative law judge found:

> > The Employer chose not to cross-examine Dr. Windsor or even offer an expert medical opinion from any of its authorized doctors. If anything, the notations made by its authorized doctors—like that quoted from Dr. Miller, supra—highlight the seriousness of the explosion event in Ms. Elliott's life. Dr. Windsor's disability rating is uncontroverted medical evidence. There is no medical evidence to suggest that the explosion was not a substantial factor in causing Ms. Elliott's psychological injury.

> (Award and Decision, page 7).

> There is no ascertainable reason in the record to reverse the administrative law judge's finding that Dr. Windsor's assessment is credible. Absent any evidence to contradict the compensability of this accident, the Commission has no choice but to find that the accident on September 17, 1998 caused a permanent partial disability of 75% to the body as a whole. To find otherwise would require

us to substitute our judgment for that of a medical expert.

\* \* \* \* \* \*

In *Sellers v. Trans World Airlines, Inc.*, 776 S.W.2d 502, 505 (Mo.App. W.D.1989), this court stated as follows:

> The Commission "may consider all the evidence, including the testimony of the employee, and draw all reasonable inferences in arriving at the percentage of disability." This is a determination within the special province of the Commission. The Commission is also not bound by the percentage estimates of the medical experts and is free to find a disability rating higher or lower than that expressed in medical testimony. This is due to the fact that determination of the degree of disability is not solely a medical question. The nature and permanence of the injury is a medical question, however, "the impact of that injury upon the employee's ability to work involves considerations which are not exclusively medical in nature."

(Citations omitted.)

■ By finding that "[a]bsent any evidence to contradict the compensability of this accident, the Commission has no choice but to find that the accident on September 17, 1998 caused a permanent partial disability of 75% to the body as a whole," the Commission misconstrued the law. It appears from the Commission's decision that it believed it was required to accept Dr. Windsor's assessment of Elliott's disability, and therefore it did not consider any of the other evidence presented or arrive at an independent conclusion as to Elliott's disability rating. This is contrary to Missouri law, as stated in *Sellers*. Although the Commission was *entitled* to believe Dr. Windsor's assessment of Elliott's disability, it was not *required* to do so. Point I is granted.

**Point II**

The District's second point on appeal is that the Commission erred in affirming the decision of the Division because factual findings concerning the extent and percent of disability are to be determined by the Commission, and the Commission's decision is subject to review by this court pursuant to § 287.495, in that the Division's decision was improperly based on the law governing the determination of medical causation, which does not allow the Commission to substitute its judgment but must instead be determined on the basis of medical evidence only.

In its award, the Division stated as follows:

> It is uncontroverted in Dr. Windsor's report that Ms. Elliott is suffering from chronic posttraumatic stress disorder. And our courts have held that:
>
> > Whatever may be the quantum of proof the law imposes on a given issue in a compensation case, however, such proof is made only by competent substantial evidence and may not rest on surmise or speculation.
>
> *Griggs v. A.B. Chance Company*, 503 S.W.2d 697, 703 (Mo.App.1973).
>
> The Employer chose not to cross-examine Dr. Windsor or even offer an expert medical opinion from any of its authorized doctors. If anything, the notations made by its authorized doctors—like that quoted from Dr. Miller, *supra*—highlight the seriousness of the explosion event in Ms. Elliott's life. Dr. Windsor's disability rating is uncontroverted medical evidence. There is no medical evidence to suggest that the explosion was not a substantial factor in causing Ms. Elliott's psychological injury. In a workers' compensation proceeding the ALJ cannot substitute his or her own opinion for uncontroverted

medical evidence regarding causation. *Wright v. Sports Associated*, 887 S.W.2d 596, 599 (Mo. banc 1994). The question of causation is one for medical testimony, without which a finding for claimant would be based upon mere conjecture and speculation and not on substantial evidence. *Jacobs v. City of Jefferson*, 991 S.W.2d 693, (Mo.App. W.D.1999). Thus, Dr. Windsor's opinion—uncontroverted even by the Employer—should stand. Any ruling to the contrary would rest solely on surmise or speculation in violation of the principles enunciated in *Griggs, Wright,* and *Jacobs, supra.*

Thus, I find that Ms. Elliott has suffered seventy-five percent (75%) permanent partial disability to the body as a whole as a result of her work-related September 17, 1998 accident.

*　　*　　*　　*　　*　　*

■ The Division correctly cites *Jacobs* for the rule that "[t]he question of causation [is] one for medical testimony, without which a finding for claimant would be based on mere conjecture and speculation and not on substantial evidence." *Jacobs v. City of Jefferson*, 991 S.W.2d 693, 696 (Mo.App. W.D.1999) (quoting *Welker v. MFA Central Co–Operative*, 380 S.W.2d 481, 487 (Mo.App.1964)). However, the Division and the Commission seem to have determined Elliott's disability rating, i.e., the impact of her injury on her ability to work, by applying the law pertaining to causation. This is a misapplication of the law. As stated in Point I, the law pertaining to determining the percentage of disability is set forth in *Sellers v. Trans World Airlines, Inc.*, 776 S.W.2d 502, 505 (Mo.App. W.D.1989). Under that standard, the Commission is not bound by the testimony of medical experts. There was evidence presented regarding Elliott's ability to work aside from Dr. Windsor's assessment, such that the Commission would not have been required to resort to surmise and speculation in making its determination. Point II is granted.

## Point III

The District's third point on appeal is that the Commission erred in awarding permanent partial disability of 75 percent to the body as a whole because an award must be reversed if the record does not contain sufficient, competent and substantial evidence to support the award or if the award is against the overwhelming weight of the evidence and the Commission's decision is subject to review by this court pursuant to § 287.495, in that the Commission failed to consider extensive evidence unfavorable to the award.

■ As stated in the standard of review, we first consider whether there was substantial and competent evidence to support the award in this case. If so, we then consider whether the award was against the overwhelming weight of the evidence. We find that there was substantial and competent evidence to support the award. The Commission was entitled to believe Elliott's testimony, as well as Dr. Windsor's psychiatric evaluation of Elliott, which concluded that Elliott's disability rating would be 75 percent "from a psychiatric standpoint." We also find that the award is not against the overwhelming weight of the evidence. The District cites Elliott's medical records, wherein Dr. Miller indicated that Elliott had improved in all areas for which she had undergone treatment, was able to return to the classroom, and was capable of effectively teaching. The District also cites the fact that Elliott returned to the classroom on April 5, 1999 and worked until the end of that school year, and she returned to work for the 1999–2000 school year. This evidence does not compel a finding that the award was against the overwhelming weight of

the evidence. However, because it is clear that the Commission did not consider all of the evidence before it in making its award, we reverse and remand to the Commission for it to consider all of the evidence in the record in determining whether to affirm the Division's award.

Elliott argues that the District's appeal is patently frivolous pursuant to Rule 84.19, and thus sanctions should be imposed on the District. In light of our disposition of this case, Elliott's request that we impose sanctions on the District is denied.

The decision of the Commission is reversed and remanded for further proceedings consistent with this opinion.

ELLIS, P.J., and EDWIN H. SMITH, J., concur.