John HAYES, Claimant–Appellant,

v.

COMPTON RIDGE CAMPGROUND, INC., Employer–Respondent,

and

Commercial Union Ins. Co., Insurer–Respondent.

No. 25639.

Missouri Court of Appeals, Southern District, Division Two.

March 24, 2004.

Motion for Rehearing or Transfer to Supreme Court Denied April 14, 2004.

John Holstein, Shugart, Thomson & Kilroy, P.C., Bradley L. Bradshaw, Springfield, for appellant.

Raymond E. Whiteaker, Whiteaker & Wilson, P.C., Springfield, for respondent.

JOHN E. PARRISH, Judge.

John Hayes (claimant) appeals an award of the Labor and Industrial Relations Commission (the commission) denying his claim for workers' compensation benefits. This court affirms in part, reverses in part, and remands.

Appellate review of a final award of the commission is directed only to questions of law. § 287.495.1.[1] "We accord the commission the same deference that is due to the court's judgment in a non-jury trial and are obliged to affirm if there is basis in the record for the decision." *Parker v. Springfield Ry. Services/Anheuser–Busch, Inc.*, 897 S.W.2d 103, 108 (Mo.App.1995). The whole record is considered to determine if there is sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003).

Claimant previously worked for Compton Ridge Campground, Inc., (employer) as a cook.[2] On May 5, 1996, while working for employer, claimant was moving a box of meat in a walk-in cooler. While twisting it in an attempt to move the box around a cart, he dropped the box. Claimant felt a pain in his back when the box dropped.

Claimant continued working the day of his injury, although his pain continued. Claimant asked his supervisor for aspirin. The supervisor, John Roten, testified that claimant told him he was hurting, but did not explain how he had hurt himself. Mr. Roten stated that claimant did not tell him he had been hurt while at work; that if he had, he would have reported the occurrence to his supervisor.

Claimant was off work one day, then returned. Claimant was in pain. Mr. Roten sent him home. Claimant asked Mr. Roten whom he should see. Mr. Roten recommended Dr. James Cesar. Claimant saw Dr. Cesar the next day, May 8, 1996. Dr. Cesar ordered claimant to stay in bed. Claimant saw Dr. Cesar two times after May 8, on May 10 and May 16. Dr. Cesar's bill for claimant's May 8 visit includes a notation, "no work." The bills for the May 10 and 16 visits do not include that notation. Dr. Cesar's notes from claimant's May 16 visit include the notation that claimant needed an MRI and an orthopedic referral.

Claimant saw employer's representative, Dean Sims, on May 16. He discussed the May 5 injury. Mr. Sims offered to send claimant to Dr. McMillan, an orthopedic surgeon. Claimant stated he did not go see Dr. McMillan because the doctor's office cancelled the appointment. According to claimant, his appointment with Dr. McMillan was scheduled for July 12. He called Dr. McMillan's office July 11 for directions to the office and was told the appointment was cancelled. The record does not reveal why the appointment was cancelled. Claimant did not make a further request of Mr. Sims to send him to a doctor.

After Dr. Cesar told claimant he could not work, he went to San Francisco with a friend. They drove claimant's car. The drive lasted 30 to 36 hours. Claimant was taking medication and drinking heavily during the trip. Claimant sold his car in California then flew to Hawaii for two weeks.

Claimant returned to Missouri following the Hawaii trip. During the summer and fall of 1996, claimant made numerous visits to emergency rooms at St. John's Hospital in Springfield, Missouri, and Skaggs Hospital in Branson, Missouri. During these visits, claimant was diagnosed with lumbar strain and chronic back pain. At each visit to St. John's Hospital, claimant was either

1. References to statutes are to RSMo 2000.

2. Facts recited in this opinion include facts recited in a temporary award entered April 2, 1997, by the Division of Workers' Compensation. No transcript of the hearing on the temporary award is available; however, the parties stipulated to the facts that appear in the temporary award.

out of pain medication or "very anxious that he [was] running out of his pain medications." An emergency room physician noted on October 9, 1996, that she was concerned claimant was "taking too much of his pain medication." Claimant was told narcotic prescriptions would not be renewed in the emergency room; that he should follow up with the Spine Clinic or Dr. Patrick N. Bays, an orthopedic surgeon.

An emergency room physician at Skaggs Hospital counseled claimant that it was not appropriate to treat chronic pain syndromes, "especially with repeated narcotic injections," in the emergency room. The physician expressed concerns about claimant's continual visits for pain shots instead of following up treatment with Dr. Cesar or Dr. Bays as had been advised by the emergency department. Another emergency room physician expressed hope that claimant was not "beginning a process of drug-seeking."

Claimant was examined by Dr. Bays. Dr. Bays believed claimant was referred to him by Dr. Cesar. He diagnosed claimant with a lumbosacral strain/sprain. He also diagnosed spondylolisthesis in the lumbar region and spina bifida, congenital defects in the spine. Dr. Bays recommended physical therapy and an MRI, but noted that claimant was financially unable to pursue these treatments. He prescribed medication and planned to see claimant in two weeks for re-evaluation. Claimant did not follow up with Dr. Bays.

Claimant eventually received an MRI scan at Louisiana State University Medical Center in Shreveport. It was negative for surgical pathology. It revealed degenerative changes, disc protrusion and disc bulge.

Claimant filed his claim for compensation June 14, 1996. At his request, an emergency hearing was held that resulted in the award of past medical expenses for treatment received from Dr. Cesar.

Claimant was examined by Dr. David G. Paff and Dr. Brian Ellefsen. Dr. Paff performed his examination in May 1998. He found claimant sustained 12.5% permanent partial disability to his body as a whole. It was Dr. Paff's opinion that the disability could improve with physical therapy. His report suggested long-term physical therapy lasting from four to eight weeks. He expressed the opinion that claimant could again become functional. Dr. Paff stated that at the time of his examination, claimant was "not functional at all." Dr. Paff did not find claimant to be a surgical candidate.

Dr. Ellefsen examined claimant February 4, 1999. He diagnosed claimant with discogenic back pain. Dr. Ellefsen recommended epidural steroid injections followed by physical therapy. Dr. Ellefsen suggested that if that treatment did not demonstrate considerable improvement, it be followed with "discograms with the possibility of fusion because of discogenic pain."

Dr. Ellefsen's evaluation was that claimant had a permanent partial disability of 25% of the body as a whole. His opinion was that claimant would not have this disability had he not lifted the box of meat on May 5, 1996. Dr. Ellefsen stated that claimant's disability might change if the treatment he prescribed were administered.

The commission, adopting the findings and award of the administrative law judge, found that claimant had abandoned his treatment; that claimant was not entitled to benefits other than those previously allowed by the temporary award for past medical expenses of Dr. Cesar. The award acknowledged that Dr. Paff and Dr. Ellefsen recommended additional treat-

ment. It concluded "that such treatment would have been appropriate had the Claimant made himself available to receive the treatment recommended," but that claimant's travels "during the treatment phase of this injury constitute an abandonment of Claimant's right to treatment." The commission found there was not sufficient evidence to prove future medical care would have been necessary to cure and relieve the effects of claimant's injury if claimant had taken reasonable steps to aid in the recovery process.

Claimant presents three points on appeal. Point III, however, is moot in that it challenges the sufficiency of the record because the record does not include a transcript of the temporary award hearing. The parties stipulated that the facts set forth in the temporary award were sufficient for determining the issues on appeal. *See* n. 2, *supra.* The parties agreed the record now before this court was sufficient; that the appeal may be decided on that record.

■ Point I contends the commission erred in holding that claimant voluntarily abandoned treatment being provided by employer and was, therefore, not entitled to past or future medical benefits or treatment, temporary total disability, or permanent disability. Claimant argues this was error for two reasons: (1) the issue of abandonment of treatment was not pleaded or stipulated as an affirmative defense to the claim filed and, therefore, was not a basis on which the commission could deny benefits; and (2) there was no competent evidence to support a conclusion that employer offered medical treatment that was unreasonably refused by claimant in that the evidence disclosed claimant attended all scheduled medical appointments or treatments offered by employer.

■ Claimant is correct that the issue of abandonment of treatment is an affirmative defense to be pleaded and proved by employer. *Stawizynski v. J.S. Alberici Const. Co.,* 936 S.W.2d 159, 163 (Mo.App. 1996); *Berry v. Moorman Mfg. Co.,* 675 S.W.2d 131, 134 (Mo.App.1984). Employer and its insurer, Commercial Union Insurance Company, filed their answer to the claim submitted by claimant in which they "den[ied] each and every, all, and, in particular, the allegations contained in the employee's Claim for Compensation." Abandonment or unreasonable refusal of medical treatment was not alleged; neither was abandonment or unreasonable refusal of medical treatment designated an issue for determination at the hearing before the administrative law judge. Arguably, by failing to plead the affirmative defense or otherwise raise the issue as being for determination at the hearing, it was not before the commission.

■ Regardless, claimant's second argument that there was no competent evidence to support a conclusion that employer offered medical treatment that was unreasonably refused by claimant is well founded. As explained in *Stawizynski,* "A claimant who is unreasonable in his treatment program is excluded from receiving compensation. Such exclusion is specifically spelled out in § 287.140(5),[3] which provides no compensation will be payable if such disability is '... caused, continued or aggravated by any unreasonable refusal to submit to any medical or surgical treatment or operation the risk of which is, in the opinion of the division or commission,

---

**3.** The text of § 287.140(5), RSMo 2000, is unchanged from the text of the statute at the time *Stawizynski* was decided.

inconsiderable in view of the seriousness of the injury.'" 936 S.W.2d at 163.

The evidence in this case does not disclose that claimant refused treatment offered by employer. Consequently, there is no showing claimant's disability was "caused, continued or aggravated by any unreasonable refusal to submit" to treatment. The only evidence of treatment tendered by employer was treatment through Dr. Cesar and Dr. McMillan. Dr. Cesar examined claimant on three occasions. On the last visit, Dr. Cesar recommended an MRI and an orthopedic referral. Claimant discussed his injury with employer and employer referred him to Dr. McMillan. An appointment was made with Dr. McMillan but cancelled. The record does not reflect that claimant cancelled the appointment. Employer tendered no further treatment. The treatment claimant sought from Dr. Bays and various emergency room physicians was on his own.

■ There can be no unreasonable refusal to submit to medical treatment if treatment is not offered. *Berry v. Moorman Mfg., supra.* There was not sufficient competent evidence to warrant denying further compensation or medical treatment on the basis that claimant refused to submit to further medical treatment or "abandoned" further treatment; neither was there sufficient competent evidence to warrant denial of temporary or permanent disability benefits. Dr. Ellefsen found claimant to have a permanent partial disability of 25% of his body as a whole; that claimant would not have this disability had he not lifted the box of meat on May 5, 1996. Dr. Paff's evaluation was that claimant's permanent partial disability was 12.5%. Both doctors qualified their evaluations by stating claimant's disability might change with future medical treatments.

■ The only medical evidence before the commission established that claimant was disabled because of the injury he sustained while working for employer on May 5, 1996. That sufficed to establish that claimant is eligible for compensation for disability. Causation is established by medical testimony. *Elliott v. Kansas City, Mo., School Dist.,* 71 S.W.3d 652, 657–58 (Mo.App.2002). The commission cannot find there is no causation if the uncontroverted medical evidence is otherwise. *Id.* It is, however, within the exclusive province of the commission to determine matters of disability. *Sanders v. St. Clair Corp.,* 943 S.W.2d 12, 17 (Mo.App.1997). The commission is not bound by percentages of disability found by medical experts. *Elliott, supra; Wray v. Schwitzer Co.,* 615 S.W.2d 646, 648–49 (Mo.App.1981).

The commission erred in denying disability benefits. The fact found by the commission that claimant abandoned medical treatment is not supported by the record. The case will be reversed and remanded for determination of the extent of disabilities sustained by claimant and for award of benefits consistent with that determination. Point I is granted in that respect.

■ The claim of error regarding denial of medical benefits is addressed with the claim of error stated in Point II. Point II contends the commission erred in denying claimant past and future medical benefits because claimant incurred past medical expenses related to treatment for the injury he sustained in the ordinary course of his employment and in denying future medical benefits for medical treatment he continues to require.

■ Section 287.140.1 requires an employer to provide an injured employee medical care but allows the employer to select the medical provider. *Blackwell v. Puritan–Bennett Corp.,* 901 S.W.2d 81, 85

(Mo.App.1995). As a general rule, an employer is not liable for medical treatment incurred by an employee independently. *Id.* An employer is held liable for independent medical treatment incurred only when the employer has notice that the employee needs treatment, or a demand is made on the employer to provide medical treatment, and the employer refuses or fails to provide the needed treatment. *Id.*

There is no evidence that employer authorized claimant to obtain medical treatment from the emergency room physicians he saw or from Dr. Bays, nor is there evidence that claimant demanded employer to provide further treatment which was refused. The record supports the commission's denial of payment of medical benefits for those expenses.

■ The record does not support the commission's denial of future medical benefits. The parts of Point I and II asserting error in the award denying future medical benefits are granted. In all other respects Point II is denied.

The part of the award denying claimant benefits for past medical expenses is affirmed. The parts of the award denying claimant benefits for future medical expenses, temporary total disability, and permanent disability are reversed. The case is remanded.

SHRUM, J., and RAHMEYER, C.J., concur.