Weldon **POARCH**, Appellant,

v.

**TREASURER OF The STATE of MISSOURI–CUSTODIAN OF The SECOND INJURY FUND, Respondent.**

**No. WD 74219.**

Missouri Court of Appeals, Western District.

May 1, 2012.

Jerrold Kenter, for Appellant.

Eric W. Lowe, for Respondent.

Before Division Three: THOMAS H. NEWTON, Presiding Judge, JAMES M. SMART, JR., Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

Weldon Poarch appeals from the decision of the Labor and Industrial Relations Commission ("the Commission") denying his claim against the Second Injury Fund ("the Fund"). On appeal, Poarch contends that the Commission erred in finding that Poarch did not sustain a compensable injury where the Commission failed to find that Poarch was not credible and the Fund did not present any evidence to refute his testimony. The decision of the Commission is affirmed.

### Factual and Procedural Background

Weldon Poarch filed his amended claim for workers' compensation on January 12, 2009. At the time of the alleged injury, Poarch was employed by Madison Apartment Group ("Employer") in Kansas City. Poarch did maintenance work for Employer's rental properties. Poarch alleged that on April 22, 2006, he was exposed to and inhaled muriatic acid while spraying an apartment for mold. He alleged that the inhalation resulted in a heart attack. Poarch also filed a claim against the Fund based upon preexisting disabilities. Poarch alleged that he had previously sustained injuries to his lungs, back, right shoulder, and his left hip, knee, and ankle. Poarch also alleged that he had suffered a hernia and had cardiovascular disease.[1]

Poarch settled his claim with Employer and proceeded with his claim against the Fund. A hearing was held before an ad-

---

1. Because Poarch's alleged last injury is the only injury pertinent to this appeal, we do not discuss his previous injuries in detail.

ministrative law judge ("ALJ") on August 3, 2010. At the time of the hearing, Poarch was 64 years old. He testified that he worked as a fireman from 1970 until 1995 when he retired from the fire department. After retiring, Poarch did maintenance work for various apartment complexes. In 1997, Poarch had a five-way bypass heart surgery. After missing six months of work, Poarch returned to work full time with no restrictions from any physician.

Poarch testified regarding the accident that occurred on April 22, 2006. Poarch stated that he was doing maintenance work for Employer at the time. Poarch was given a spray bottle and was told to spray one of the apartments for mold. Poarch was usually given a bleach formula when he sprayed for mold. Poarch testified that when he sprayed the liquid from the bottle, he realized that it was muriatic acid instead of the bleach formula. The fumes were very strong and he had to leave the apartment. On cross-examination, Poarch admitted that the spray bottle was not labeled. He said that he had used a muriatic acid solution to clean gutters around 1970 but that overall his use of muriatic acid was very limited.

Poarch did not experience any symptoms immediately after being exposed to the muriatic acid. However, approximately seven to ten days later, Poarch began experiencing breathing problems. During this time period, Poarch continued his normal job duties. Poarch testified that on the morning of May 18, 2006, he had carried a refrigerator, a stove, a dishwasher, and a washer and dryer out of an apartment. After that, Poarch dropped to his knees, vomited, felt a jolt go through his body, and passed out. Poarch believed that he had had a heart attack. However, Poarch did not seek medical treatment after this incident, and therefore, no doctor was able to determine whether Poarch had a heart attack on that day.

On June 9, 2006, Poarch went to see Dr. Curtis Schenk about his breathing problems. Dr. Schenk told Poarch that he had fluid in his lungs and that he was in danger of having a heart attack. Poarch told Dr. Schenk that he believed a heart attack had already occurred. Dr. Schenk advised Poarch to see a cardiologist.

Poarch subsequently received treatment from Dr. Allen Gutovitz, a cardiologist. Dr. Gutovitz provided restrictions for Poarch, stating that Poarch could only work four hours per day and should not lift anything heavier than twenty-five pounds. Poarch returned to work on those restrictions, but eventually ended up having to do some of the same physical tasks he did before. Because he could not perform the same tasks, Poarch stopped working for Employer on September 30, 2006. Poarch testified that he later had two more heart attacks, one in 2008 and one in 2009.

As to the issue of causation, Poarch presented the deposition testimony of Dr. Allen Parmet, an occupational medicine specialist. Dr. Parmet examined Poarch on March 6, 2008. Dr. Parmet testified that Poarch told him that he had been exposed to muriatic acid. Dr. Parmet testified that the exposure to muriatic acid was the prevailing factor in causing additional disability to Poarch's heart. He concluded that the accident on April 22, 2006, resulted in a permanent partial disability of twenty percent to the body as a whole due to Poarch's heart condition.

As part of his independent medical evaluation of Poarch, Dr. Parmet reviewed the records of Dr. Gutovitz, Poarch's cardiologist. In one of the records, Dr. Gutovitz wrote:

The patient asks whether the muriatic acid could have contributed to his worsening left ventricular function, and it is

certainly possible, particularly if he had a [heart attack] at the time. He was not hospitalized at that time and I have no medical records of his care from that time up until the time I saw the patient initially on 06/13/06.

In my opinion, it is possible that the muriatic acid spill and exposure that the patient sustained contributed to his worsening left ventricular function, although I do not have documentation.

Dr. Parmet stated that Dr. Gutovitz was unable to conduct pulmonary studies at the time of Poarch's injury because Poarch did not seek medical attention when it occurred.

In its findings of fact and rulings of law, the ALJ found that Poarch had not met his burden of proving that he had sustained an injury because of an accident as defined by Missouri law. The ALJ noted that the spray bottle Poarch used was not labeled and that the substance inside it was never tested. Although Poarch said he had some familiarity with muriatic acid, his familiarity with it was very limited. He was never informed by anyone that it was muriatic acid. He gave no specific information about how he reached the conclusion it was muriatic acid. Additionally, Poarch had not established that he had any expertise in identifying muriatic acid, and there was no testimony as to the concentration level of the substance in the bottle. The ALJ stated that Poarch's "whole case was based on his uneducated self-diagnosis or determination that he was exposed to some substance which he offered no credible proof that he was in fact exposed or that the substance was toxic." Because Poarch's claim was based so much on highly speculative notions, the ALJ concluded that Poarch had offered no credible evidence that he was exposed to muriatic acid or that he was exposed to any toxic substance at all.

The ALJ also found that Poarch did not prove that he had a heart attack on May 18, 2006, noting that Poarch self-diagnosed the heart attack and failed to seek medical treatment afterwards. Therefore, no doctor was able to determine whether Poarch had suffered a heart attack. Finally, the ALJ found that Dr. Gutovitz's note and Dr. Parmet's conclusions were based on speculation where there was no credible evidence to support Poarch's allegation that he was exposed to muriatic acid and thereafter suffered a heart attack. Therefore, the ALJ found that Poarch had failed to prove that he sustained a compensable injury and denied Poarch's claim against the Fund.

Poarch filed an application for review with the Commission. The Commission affirmed and adopted the portion of the decision in which the ALJ found that Poarch failed to meet his burden of proving that he sustained a compensable injury. It did not adopt the ALJ's discussion of any other issues, finding those issues to be moot. Poarch's appeal from the Commission's decision followed.

## Standard of Review

Our standard of review is governed by section 287.495.1, RSMo 2000, which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■■■ An appellate court " 'must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence.' " *Angus v. Second Injury Fund*, 328 S.W.3d 294, 297 (Mo.App. W.D.2010) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003)). In reviewing the Commission's decision, we view the evidence objectively and not in the light most favorable to the decision of the Commission. *See id.* However, we defer to the Commission on issues involving the credibility of witnesses and the weight given to their testimony. *Id.* at 300. When, as here, "the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission." *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo.App. W.D.2007).

### Discussion

In his sole point on appeal, Poarch contends that the Commission erred in finding that he did not sustain a compensable injury on April 22, 2006. Poarch contends that where the Fund failed to present any evidence to refute his testimony, and the Commission did not hold that his testimony was not credible, the Commission was required to accept Poarch's testimony as true. Thus, the Commission should have found that Poarch sustained a compensable injury based upon his testimony.

■■■ Poarch contends that the language of section 287.808, RSMo Cum.Supp.2011, supports his argument. Section 287.808 was enacted in 2005 and provides the following:

The burden of establishing any affirmative defense is on the employer. The burden of proving an entitlement to compensation under this chapter is on the employee or dependent. In asserting any claim or defense based on a factual proposition, the party asserting such claim or defense must establish that such proposition is more likely to be true than not true.

Poarch argues that the statute mandates that once the claimant presents unimpeached evidence, the burden shifts to the defense to prove its defense. Poarch argues that in the context of this case, the language of the statute required the Fund to present evidence that no accident occurred.

■■■ Contrary to Poarch's argument, nothing in section 287.808 mandates that the defense present evidence. The statute clearly states that the claimant has the burden of proving his entitlement to compensation. If the Fund chooses to assert an affirmative defense or a defense based on a factual proposition, it must establish that the defense or proposition is more likely to be true than not true. This language does not mandate that the Fund present evidence; rather, it merely sets out the burden of proof for the Fund if it chooses to establish such a defense. Whether the Fund presents evidence or not, the claimant always has the burden of proving that he is entitled to compensation. In this case, the Fund chose not to present any evidence and rely on the possibility that the Commission would find that Poarch failed to meet his burden of proving that an accident occurred. Nothing in section 287.808 required the Fund to present evidence to refute Poarch's testimony.

Moreover, Poarch's entire argument is premised on his assertion that the Commission never found that he was not credi-

ble. The express language of the ALJ's findings, as adopted by the Commission, contradicts Poarch's argument. Where Poarch's testimony was the only evidence regarding the alleged exposure to muriatic acid, and the ALJ found that Poarch had not presented any credible evidence on that issue, the ALJ clearly did not find Poarch's testimony to be credible. That finding was not necessarily a finding that Poarch was intentionally fabricating testimony. The ALJ could have reached the same conclusion even if the ALJ believed Poarch honestly believed in the factual claims he asserted. Specifically, the ALJ found that Poarch's "whole case was based on his uneducated self-diagnosis or determination that he was exposed to some substance for which he offered no credible proof that he was in fact exposed or that the substance was toxic." The ALJ further noted that Poarch had no expertise in identifying muriatic acid and that Poarch, who was not a doctor, only offered his self-diagnosis as proof that he sustained a heart attack on May 18, 2006.

The ALJ's findings clearly show that the ALJ did not find Poarch's testimony to be credible, even though the ALJ might have believed that Poarch subjectively believed his own factual claims. Credibility involves more than the witness's own subjective belief. The findings of the ALJ were adopted by the Commission, and we defer to the Commission on issues involving the credibility of witnesses. *Angus*, 328 S.W.3d at 300. The language of section 287.808 does not alter the Commission's ability to make credibility determinations; nor does it require the Fund to present evidence to contradict a claimant's evidence. The statute merely sets out the burden of proof the Fund must meet if it chooses to present a defense. Where Poarch had the burden of proving his entitlement to compensation, the Fund was not required to present evidence and could simply rely on the possibility that the Commission would find that Poarch did not meet his burden of proof. Therefore, the Commission did not err in finding that Poarch failed to meet his burden of proving that he sustained a compensable injury.

The decision of the Commission is affirmed.

All concur.