

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **RUBY RASA,** | **WD78562** |
| **Appellant,** | **OPINION FILED:** |
| **v.** | **NOVEMBER 17, 2015** |
| **TREASURER OF THE STATE OF MISSOURI-CUSTODIAN OF THE SECOND INJURY FUND,** | |
| **Respondent.** | |

**Labor and Industrial Relations**

**Before Division One: Anthony Rex Gabbert, P.J., Victor C. Howard, and Cynthia Martin, JJ.**

Ruby Rasa appeals an award of the Labor and Industrial Relations Commission ("the Commission") denying her claim for permanent total disability benefits from the Second Injury Fund ("SIF"). We affirm the Commission's award.

### Facts & Procedural Background

Appellant Rasa previously worked for Higginsville Habilitation Center ("HHC"). Her duties involved assisting HHC patients with everyday movements and tasks while they completed their physical rehabilitation programs. In June 2008, Rasa suffered from a partially disabling work-related injury that she claimed combined with a variety of severe preexisting medical conditions to create a permanent total disability.

The majority of Rasa's preexisting conditions relate to a motor vehicle accident that occurred in 1988. In support of her current claim against SIF, Rasa testified that this accident caused her to develop chronic neck pain, mid-back pain, and headaches for which she was treated by a chiropractor on a regular basis. She testified that these symptoms were chronic and caused a hindrance or obstacle to her employment in that they caused her to occasionally lose focus at work, miss work for chiropractic treatments, ask other employees for help completing job tasks, and to change her work schedule from five days to three days in order to give her body more time to rest and recover between shifts.

Rasa also testified that she suffered from a variety of other pre-2008 conditions including incontinence, diabetes, and diabetes-associated peripheral neuropathy. She testified that these conditions were a hindrance or obstacle to her employment in that they required her to take unscheduled breaks, and also caused her to suffer from fatigue and pain in her feet attributable to her diabetes. Rasa asserted that the combination of these symptoms caused her to have a 5% permanent partial disability to her body as a whole in the years between 1988 and 2008.

On June 6, 2008, Rasa was assisting a patient in the bathroom in the course and scope of her employment with HHC when the patient slipped and grabbed her, causing Rasa to strain her lower back and twist her right knee. Upon prompt notification of the injury, HHC sent Rasa to the emergency room. While there, emergency personnel recorded Rasa's complaints of lower back pain radiating to her right lower extremity, and an MRI revealed a tear to the medial meniscus of her right knee.

Rasa subsequently underwent surgery on her right knee and underwent physical therapy for the injury until October 16, 2008. At that time, her surgeon, Dr. Reardon, recommended the use of a hinged knee brace and over-the-counter medications to manage her remaining knee pain.

2

In 2009, Rasa saw another doctor for lingering lower back pain. A May 2009 MRI revealed multilevel degenerative disc and facet disease in her low back and cervical region. Rasa then received epidural injections in her lower back that improved her lower back complaints.

Rasa also saw a neurologist, Dr. Applebaum, regarding her pain from the June 2008 injury and he placed Rasa on a 20-pound lifting restriction. In 2010, he noted that she suffered from neck and lower back pain, headaches, paresthesia of the left leg, weakness, general overall fatigue, difficulty climbing stairs, occasional incontinence, insomnia, and moodiness. Applebaum opined that these symptoms and complaints were not related to Rasa's prior 1988 motor vehicle accident, but were instead caused only by the June 2008 work accident. In 2011, Dr. Applebaum found that Rasa had reached maximum medical improvement and placed her on a permanent 20-pound lifting restriction. Applebaum found that she had sustained a 10% permanent partial disability to the body as a whole as a result of the June 2008 accident, but did not find that she had a pre-existing disability.

Rasa eventually filed a claim against SIF for permanent total disability benefits as a result of her combined preexisting conditions and the primary injury. At the initial hearing with the ALJ, Rasa presented the testimony of Dr. Stuckmeyer, her medical expert. Stuckmeyer found that Rasa sustained a 25% permanent partial disability to the body as a whole as a result of the June 2008 accident, and he assessed her with a 5% pre-existing disability due to the 1988 car accident symptoms. He opined that Rasa was permanently and totally disabled based on the synergistic effect of the pre-existing disability combined with the effects of the primary June 2008 injury.

The ALJ found that Rasa had sustained a compensable work-related accident in June 2008 that resulted in a 17.5% permanent partial disability to the right knee and a 19.75%

3

permanent partial disability to the body as a whole. However, the ALJ found that Rasa failed to provide sufficient evidence that she suffered from a severe pre-existing disability of such seriousness to constituted a hindrance or obstacle to her employment. The ALJ noted that both Dr. Applebaum and Dr. Reardon had found her past medical history and symptoms to be insignificant, and also discredited the testimony of Rasa and Dr. Stuckmeyer as being inconsistent. The ALJ further discredited the opinions of Rasa's vocational experts because they relied on incorrect information and were internally inconsistent  For these reasons, the ALJ ultimately concluded that Rasa had not sufficiently proven that she suffered from a severe pre-existing condition that would entitle her to permanent total disability benefits from SIF.

Rasa then appealed to the Commission, which ultimately affirmed the ALJ's award. Although the Commission disagreed with the ALJ's findings as to Rasa's own testimony, it adopted the ALJ's findings regarding Stuckmeyer's testimony and that of Rasa's vocational experts. Because Rasa's testimony regarding her pre-existing conditions was therefore not supported by credible medical evidence, and because her other treating physicians had found her past symptoms insignificant, the Commission adopted the ALJ's award denying Rasa benefits from SIF.

This appeal follows.

### Standard of Review

Upon review of the Commission's decision in a workers' compensation case, we may modify, reverse, remand for rehearing, or set aside the Commission's decision only upon any of the following reasons and no other:

(1) That the Commission acted in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the Commission do not support the award; or

4

(4) That there was not sufficient competent evidence in the record to warrant making the award.

§ 287.495.1, RSMo Supp. 2014. Thus, to determine the suitability of an award made by the Commission, we must "examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award . . . ." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). We may not affirm an award made by the Commission if, considering the whole record, it is contrary to the overwhelming weight of the evidence. *Id.* Conversely, we will affirm the Commission's decision if we determine that the Commission "could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012) (internal citation omitted).

Upon review of the Commission's decision, "we view the evidence objectively and not in the light most favorable to the decision of the Commission." *Poarch v. Treas. of State Custodian of Missouri-Custodian of Second Injury Fund*, 365 S.W.3d 638, 642 (Mo. App. W.D. 2012) (internal citation omitted). Where a Commission's decision is based on its interpretation and application of the law, review the Commission's conclusions of law and its decision *de novo*. *Riley v. City of Liberty*, 404 S.W.3d 434, 439 (Mo. App. W.D. 2013). However, we defer to the Commission's factual findings on issues such as the credibility of witnesses and the weight given to their testimony. *Poarch*, 365 S.W.3d at 642. "This includes the Commission's evaluation of expert medical testimony." *Pruett v. Fed. Mogul Corp.*, 365 S.W.3d 296, 304 (Mo. App. S.D. 2012) (internal quotation omitted). "The Commission, as the finder of fact, is free to believe or disbelieve any evidence." *Molder v. Missouri State Treas.*, 342 S.W.3d 406, 409 (Mo. App. W.D. 2011) (internal quotation omitted). Thus, when the evidence before the Commission

5

"would warrant either of two opposed findings, [we are] bound by the [Commission's] determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012) (internal citation omitted) (internal quotation omitted).

## Analysis

In her sole point on appeal, Rasa contends that the Commission erred in denying her permanent total disability benefits because she presented sufficient competent evidence to support an award in her favor. Rasa argues that her own credible testimony, plus the uncontroverted testimony of her medical expert, Dr. Stuckmeyer, was sufficient to prove that she had a permanent total disability caused by a combination of severe pre-existing conditions and her primary injury. She further contends that in finding her medical expert's testimony regarding the severity of her pre-existing conditions to be not credible, the Commission impermissibly substituted its own lay opinion as to the cause of her overall permanent total disability for that of the medical expert. We disagree.

Pursuant to Section 287.808, it is the employee who bears the burden of proving that she is entitled to compensation under Chapter 287. § 287.808, RSMo Supp. 2014. To prove that she was entitled to partial permanent disability benefits from SIF, Rasa therefore bore the burden of demonstrating: (1) that she suffered from a pre-existing permanent partial disability "of such seriousness as to constitute a hindrance or obstacle to [her] employment or to obtaining reemployment"; and (2) that such a pre-existing partial disability combined with a subsequent work-related injury "so as to cause a greater degree of disability than would have resulted in the absence of the [pre-existing] condition." *See* § 287.220.2, RSMo Supp. 2014; *Knisley v. Charleswood Corp.*, 211 S.W.3d 629, 637 (Mo. App. E.D. 2007). In other words, Rasa was

6

required to demonstrate that her overall permanent total disability was caused by a combination of severe pre-existing conditions and her primary injury, which is a two-part burden.

Although Rasa attempts to characterize the Commission's decision as an erroneous determination of causation for her overall disability, the true issue here is whether Rasa met her burden of proof regarding just the first required element under Section 287.220.2 (*i.e.*, whether she proved that she suffered from a sufficiently severe pre-existing condition). If she did not prove that she suffered from a pre-existing condition "of such seriousness as to constitute a hindrance or obstacle to her employment or to obtaining reemployment," she did not meet her burden of proof and she is not entitled to compensation under Chapter 287.

Rasa contends that her own testimony, plus the testimony of her medical expert, Dr. Stuckmeyer, sufficiently demonstrated that she suffered from a severe pre-existing condition. She argues that because the Commission found her own testimony to be credible, and because Stuckmeyer's testimony was uncontroverted, the Commission was required to accept this combined testimony as true. Thus, the Commission should have found that Rasa met her burden of proof regarding the existence of a sufficiently severe pre-existing disability. However, not only was it within the Commission's discretion to afford Rasa's testimony more or less weight, but the record before us demonstrates that Dr. Stuckmeyer's testimony was not, in fact, uncontroverted. The record also demonstrates that the Commission's judgment of Stuckmeyer's testimony was a proper determination of his credibility and not (as Rasa argues) an impermissible substitution of the Commission's lay opinion for his expert testimony.[1]

---

[1] Rasa cites to *Hayes v. Compton Ridge Campground, Inc.*, 135 S.W.3d 465 (Mo. App. S.D. 2004) and *Abt v. Mississippi Lime Co.*, 388 S.W.3d 571 (Mo. App. E.D. 2012) to support her contention that the Commission impermissibly substituted its own lay opinion on the cause of her permanent total disability for the uncontroverted contrary testimony of Dr. Stuckmeyer. However, we find both *Hayes* and *Abt* distinguishable from the present case.

7

Because the Commission's finding regarding Stuckmeyer's testimony was a credibility determination, we must defer to the Commission's judgment regarding that testimony. *See Pruett v. Fed. Mogul Corp.*, 365 S.W.3d 296, 304 (Mo. App. S.D. 2012) (holding that the Commission has sole discretion to assess witness credibility and weight to give testimony, including medical expert testimony). Accordingly, our main consideration upon reviewing the Commission's award is whether its findings and overall result were reasonably supported by the evidence before it; if so, "it is irrelevant that there is supportive evidence for [a] contrary finding." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012).

With respect to the question of whether Rasa suffered from a sufficiently severe pre-existing condition, the Commission first considered Rasa's own testimony and found it to be

---

In *Hayes*, a major issue was whether the claimant's disability was caused solely by his work injury or by his unreasonable refusal of medical treatment following the injury, as the Commission posited. *Hayes*, 135 S.W.3d at 470. The two medical experts on record in that case both opined that the claimant's disability was caused solely by his work-related injury, and there was no credible evidence demonstrating that the claimant had refused treatment. *Id.* Because the medical expert testimony in that case was uncontroverted, the appellate court held that the Commission could not substitute its lay opinion as to the cause of the claimant's overall injury. *Id.* Here, however, Dr. Stuckmeyer's testimony regarding the cause of Rasa's overall injury was not uncontroverted because the record demonstrates that both Dr. Applebaum and Dr. Reardon considered her pre-existing conditions to be insignificant. Additionally, the claimant's burden in *Hayes* was different from Rasa's in that Hayes was required to demonstrate a work-related injury only, while Rasa was required to demonstrate that she suffered from a severe pre-existing condition *and* a primary work-related injury. *Hayes* is therefore inapposite to the case at bar.

At issue in *Abt* was whether the Commission used competent substantial evidence to determine that several medical experts were not credible. 388 S.W.3d at 578-79. In that case, the Commission believed that the testimony of two experts was not credible because they had made their opinions without taking into account the claimant's full medical history. *Id.* at 579-80. However, the record did not support the Commission's conclusion as to one expert's testimony, which was based on vague criticisms of his method for assessing the claimant. *Id.* The appellate court held that the Commission's credibility determinations may not simply make vague criticisms regarding an expert's process in reaching an opinion, but must instead be "rooted in disbelief" of the expert's opinion based upon sufficient competent evidence that the expert committed some methodological failure. *Id.* Also at issue in *Abt* was the Commission's ultimate finding that the claimant's disability resulted from the subsequent deterioration of his pre-existing conditions rather than from his primary work-related injury, despite the fact that none of the medical experts had testified as to that conclusion. *Id.* at 581. Rather than choosing one of the medical opinions offered by experts, the Commission made a seemingly arbitrary finding as to causation that was not supported by any medical opinion on the record. *Id.* The appellate court held that the Commission may not make such a finding as to the cause of a claimant's disability where that finding is completely unsupported by any medical opinion on the record. *Id.* at 582. Unlike in *Abt*, however, the Commission's findings here clearly pointed to specific evidence and methodological failures that supported its disbelief of Dr. Stuckmeyer's medical conclusions. Additionally, the Commission did not offer some alternative, unsupported cause for Rasa's overall disability—it did not even reach that question. For these reasons, *Abt* is inapposite to the case at bar.

8

credible (in contrast to the ALJ, who did not find Rasa's testimony credible because it contained a number of inconsistencies). The Commission then considered Dr. Stuckmeyer's testimony and found that it was not credible. This determination led the Commission to conclude that the opinions of Rasa's vocational experts also were not credible because they were largely premised upon incorrect or inconsistent statements in Stuckmeyer's testimony.

In making this determination, the Commission sorted through all the evidence connected to Dr. Stuckmeyer, including his testimony, reports, opinions in his reports, and differing opinions regarding the severity of Rasa's pre-existing conditions. It considered the fact that Stuckmeyer did not endorse, rate, or offer any opinion on several of Rasa's pre-existing conditions, thus rendering his opinion less than credible. The Commission also considered medical records from other doctors who treated Rasa following her primary injury that expressed a contrary belief that her pre-existing conditions were insignificant.

Specifically with regard to Rasa's chronic headaches and neck pain, the Commission noted that Stuckmeyer appeared to be under the mistaken belief that these were referable to the primary work-related injury. With regard to the incontinence and diabetes-related foot pain, Stuckmeyer was wholly silent. Most important to the Commission was the fact that Stuckmeyer did not explain how the pre-existing chronic conditions were rated or were responsible for the overall disability, nor how they combined with the primary injury to create current work restrictions. Instead, the Commission found that Stuckmeyer merely offered a conclusory opinion that Rasa is permanently and totally disabled due to a combination of her pre-existing disabilities and her primary injury, but without explaining *how* these conditions combined to create a permanent total disability.

After making these credibility determinations, the Commission was then required to weigh Rasa's own testimony against the rest of the evidence, which did not credibly support the proposition that her pre-existing conditions rose to the level of a hindrance or obstacle to her employment or reemployment. The Commission ultimately accorded Rasa's testimony little weight because it was not supported by credible medical evidence, and because it was contradicted by the opinions of other doctors who treated Rasa following her primary injury and found her pre-existing conditions to be insignificant. This weighing process was fully within the Commission's discretion to make credibility determinations and decide how much weight different testimony should be given; thus, the Commission's ultimate conclusions were reasonably supported by the evidence before it. Rasa's point is denied.

## Conclusion

In our review of the whole record, it was not against the weight of the evidence for the Commission to find that Rasa failed to meet her burden of showing that her asserted pre-existing conditions were severe enough to establish an entitlement to benefits from SIF. *Payne v. Treasurer of State, Custodian of the Second Injury Fund*, 417 S.W.3d 834, 849 (Mo. App. S.D. 2014). The Commission properly considered the whole record in making its factual findings, and its overall result was reasonably supported by sufficient competent evidence.

Noting again that this Court defers to the Commission on issues involving the credibility of witnesses and the weight to be given their testimony, we find that there was competent and substantial evidence to support the Commission's decision denying permanent partial disability benefits to Appellant Rasa. We therefore find no error in the Commission's final award and affirm its decision.

10

_____
Anthony Rex Gabbert, Judge

All concur.