**Marian KNISLEY, Appellant,**

v.

**CHARLESWOOD CORPORATION and Treasurer of Missouri as Custodian of the Second Injury Fund, Respondents.**

**No. ED 87605.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 16, 2007.

630

J. Patrick Chassaing, Clayton, MO, for appellant.

Heidi Jennings, St. Louis, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Marian Knisley (Claimant) appeals from the final award of the Labor and Industrial Commission awarding her compensation from Charleswood Corporation (Employer) and denying compensation from the Second Injury Fund (SIF). We affirm in part and reverse the Commission's award with respect to the SIF and remand to the Commission.

## I. Background

Claimant was born on October 26, 1951 and began working for Employer in 1993. Claimant held a variety of positions with Employer, including embosser. As an embosser, Claimant was required to set fifty to seventy pound brass dies in machines which were used to make impressions on wood furniture.

### A. The April 6, 1999 injury and subsequent medical conditions

While at work on April 6, 1999, Claimant experienced intense back pain after setting up two embossing machines. Because it was near the end of her shift, Claimant returned home, took Tylenol, applied heat to her back and went to bed. The next day Claimant went to work and reported the injury. Employer's nurse sent Claimant to Doctor's Hospital, where she was x-rayed and given an injection for pain and oral pain medication. Claimant was instructed to take off the next week of work. When Claimant returned to work, she was placed on light duty. Claimant continued

to have pain and was seen by Dr. Doumit, Employer's physician who prescribed physical therapy and pain medication.

In July 1999, having failed to improve, Claimant returned to Dr. Doumit who ordered an MRI which revealed a herniated disc in Claimant's lower back as well as moderately severe degenerative disc disease.

Dr. Doumit referred Claimant to Dr. Vellinga, a pain specialist. Dr. Vellinga diagnosed Claimant with multiple herniated discs and, during August and September of 1999, administered a series of three epidural injections to the lower spine. In May 2000, Dr. Vellinga performed a nerve block. As a result of these treatments, Claimant experienced temporary relief.

In October 2000, Claimant discovered a lump in her left breast. The lump was diagnosed as cancerous and claimant underwent a left mastectomy and received chemotherapy. During this time, doctors also diagnosed Claimant with uterine polyps which were surgically removed. Claimant returned to work in March 2001.

In May 2001, after her cancer treatment ended, Dr. Vellinga ordered another MRI of Claimant's lower back. The MRI showed degenerative disc disease and bulging discs. Dr. Vellinga referred Claimant to Dr. Piper, an orthopedic surgeon, who ordered a lumbar myelogram and suggested conservative treatment for pain. Claimant did not receive any meaningful relief. In September 2001, Dr. Piper concluded that Claimant's vertebrae were "moving" and recommended a back fusion and ordered her off work.

On November 7, 2001, Dr. Piper performed a discectomy and fusion of the vertebrae in Claimant's lower back. Claimant continued to experience pain, despite medication. Dr. Piper ordered physical therapy and instructed Claimant to attend work-hardening. Claimant was unable to tolerate the work-hardening regimen.

In January 2003, Dr. Piper determined Claimant was at the maximum medical improvement, and discharged her from his care. Following discharge from Dr. Piper's care, Claimant saw Dr. Cuellar, her family physician, who referred her to Dr. Kennedy, a neurologist recommended by Employer.

In August 2002, Dr. Kennedy examined Claimant and concluded that she "should be in a job capacity wherein she is not lifting more than 10 pounds, nor doing more than occasional bending, twisting or stooping on a permanent basis." Dr. Kennedy sent Claimant to Dr. Graham, a pain specialist, who prescribed Neurontin in increasing dosages and also administered a cortisone injection. Claimant continued to have pain.

Claimant later began treatment with Dr. Nasrallah, a chiropractor, who administered electric and heat treatment to her back. Although Claimant experienced temporary relief from these treatments, she eventually discontinued them because of the long drive to Dr. Nasrallah's office.

**B. Pre–April 6, 1999 medical conditions**

Prior to the April 6, 1999 injury, Claimant suffered from numerous other medical conditions. In May 1985, Claimant found a lump in her right breast. Dr. James removed the mass and a margin of surrounding tissue. The pathology report showed that the mass was cancerous and Claimant received another surgery to remove approximately twenty-three lymph nodes as well as six months of chemotherapy treatment and four weeks of radiation. In 1990, a mammogram revealed a mass in Claimant's left breast, requiring surgical removal of the mass along with approxi-

mately twenty lymph nodes. Claimant underwent another round of chemotherapy and radiation.

In 1990, Claimant was diagnosed with bilateral carpal tunnel syndrome and hypertension and began taking hypertension medication. Claimant underwent a right carpal tunnel surgical release in April 1990.

In 1993, Employer administered a hearing test to Claimant that showed a slight hearing loss in Claimant's left ear. In 1994, Claimant detected a lump in her right breast, underwent a mastectomy and was treated with Tamoxifen for the next five and one half years. As a result of the surgery, Claimant missed eight weeks of work. In 1996, a physician surgically reconstructed Claimant's right breast and she experienced complications causing an absence from work of more than ten weeks. In 1998, Claimant experienced heart palpitations and shortness of breath while at work and was subsequently diagnosed with mitral valve prolapse. In February 1999, a divorce precipitated a nervous breakdown and treatment with an anti-depressant.

### C. Procedural history

On July 12, 2003, Claimant filed a claim for compensation against Employer and the SIF. An Administrative Law Judge heard Claimant's claim on March 14, 2005. The ALJ issued her award on May 16, 2005, finding Claimant sustained permanent partial disability of forty-five percent of the body referable to the injury of April 6, 1999. The ALJ found against Claimant with respect to her SIF claim on the basis that Dr. Musich, a specialist in industrial medicine who evaluated Claimant in 2004, "failed to establish that [Claimant] has

pre-existing disability significant enough to combine with low back injury" to implicate the SIF. Claimant appealed the award to the Commission. The Commission found the award of the ALJ was supported by competent and substantial evidence and affirmed the decision of the ALJ. Claimant appeals.

### II. Standard of Review

■■■ Our review of a workers' compensation award is limited to "a single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). We will modify, reverse, remand or set aside the award only if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant making the award. *Id.* at 222. Where issues involve matters of law, we review *de novo*. *Endicott v. Display Technologies*, 77 S.W.3d 612, 615 (Mo. banc 2002).

### III. Discussion

### A. Permanent partial disability

In her first point, Claimant contends the Commission's award of forty-five percent permanent partial disability is not supported by competent and substantial evidence and is contrary to the overwhelming weight of the evidence. Specifically, Claimant contends the evidence supports: (1) an award of sixty-five percent or more permanent partial disability for her back injury of April 6, 1999 and (2) an award of permanent total disability against the SIF.[1]

---

1. Claimant raises two points. Because we find her first point dispositive, we decline to address her second point.

As an initial matter, "the determination of a percentage of disability awarded to a claimant is a finding of fact within the province of the Commission, and this court will not substitute its judgment for that of the Commission even if this court would have made a different initial conclusion," (citation omitted). *Ransburg v. Great Plains Drilling*, 22 S.W.3d 726, 732 (Mo.App. W.D.2000) (overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)). When there is conflicting medical evidence, the issue is peculiarly for the Commission's determination. *Sharp v. New Mac Elec. Co-op.*, 92 S.W.3d 351, 354 (Mo.App. S.D.2003)(overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)). The fact that the record also supports a finding of a higher degree of impairment does not require a reversal. *See Smith v. ConAgra, Inc.*, 949 S.W.2d 917, 922 (Mo. App. W.D.1997) (overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo.banc 2003)). The Commission is free to deviate from the exact disability percentages given by the medical experts, especially when, as here, there is additional testimony as to Claimant's ability to function. *See Jost v. Big Boys Steel Erection, Inc.*, 946 S.W.2d 777, 779 (Mo.App. E.D.1997) (overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)).

The Commission based the award of forty-five percent permanent partial disability upon Claimant's testimony, the opinions of Dr. Musich and Dr. Kennedy and the restrictions each physician imposed on Claimant. Dr. Musich evaluated Claimant and rated her at sixty-five percent permanent partial disability and recommended that Claimant drive no more than 20 minutes, limit standing and walking to four hours in an eight hour work day, alternate between sitting and standing over 15 minutes and lift nothing greater than 10 pounds. In contrast, Dr. Kennedy, Claimant's neurosurgeon, rated her permanent partial disability at twenty-five percent. Dr. Kennedy opined that Claimant should lift no more than 10 pounds and only occasionally bend, twist, or stoop. Claimant testified that she was not able to lift, stoop, walk any distance, sit on a hard bench, or stand for more than 10 to 15 minutes.

Claimant argues that Dr. Kennedy's twenty-five percent rating is contrary to his opinion that Claimant had lost fifty percent range of motion in her lower back and her pain is unrelenting and seems to be aggravated by most types of activities. Nevertheless, the Commission determines credibility and is free to accept certain aspects of an expert's testimony and reject other aspects. *See Id.*

In this case, the Commission's award is not contrary to the overwhelming weight of the evidence, and is supported by competent and substantial evidence on the whole record. Accordingly, we find the Commission did not err in finding Claimant sustained permanent partial disability of forty-five percent of the whole body due to the April 6, 1999 back injury.

### B. Permanent total disability (Second Injury Fund)

Claimant also contends the Commission erred when it rejected an award of permanent total disability benefits against the SIF. To prevail against the SIF on a claim for permanent total disability, a claimant must establish that: (1) she had a permanent partial disability at the time she sustained the work-related injury and (2) the pre-existing permanent partial disability was of such seriousness as to constitute a hindrance or obstacle to her employment. Section 287.220.1 RSMo

2000 [2]; *Motton v. Outsource Intern.*, 77 S.W.3d 669, 673 (Mo.App. E.D.2002). "The test for permanent total disability is the worker's ability to compete in the open labor market in that it measures the worker's potential for returning to employment." *Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 811 (Mo.App. E.D.2000)(overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)); *Garrone v. Treasurer of State of Missouri*, 157 S.W.3d 237, 244 (Mo.App. E.D.2004). The primary determination is whether an employer can reasonably be expected to hire the employee, given his or her present physical condition, and reasonably expect the employee to successfully perform the work. 157 S.W.3d at 244.

Here, Dr. Musich testified that Claimant "suffered significant medical conditions prior to the April 6, 1999 back injury, including recurrent metastatic bilateral breast cancer, right carpal tunnel syndrome, mitral valve prolapse and significant depression and anxiety." Dr. Musich ascribed a disability of thirty-five percent of the whole body to Claimant's pre-existing disabilities and concluded that Claimant was totally and permanently disabled as a result of her present and past disabilities, her limited education, lack of transferable skills and her ongoing medical care and treatment.

The ALJ found that Claimant failed to sustain her burden of proving SIF liability because Dr. Musich failed to: (1) "distinguish the disabilities, grouping sequelae of metastatic breast cancer, carpal tunnel syndrome, cardiac mitral valve prolapse and hypertension together," (2) "distinguish between the cancer pre-existing 1999 and the bout of cancer in 2000" and (3) "establish that Claimant has pre-existing disability significant enough to combine

with the low back injury and to, thus, implicate the Second Injury Fund for permanent partial or permanent total disability."

Section 287.200.1 does not require a claimant to distinguish each disability and assign a separate percentage for each of several pre-existing disabilities to prevail on a claim for permanent total disability. Section 287.200.1; *See Vaught v. Vaughts, Inc.*, 938 S.W.2d 931, 942 (Mo. App. S.D.1997) (overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)). Rather, a claimant must establish the extent, or percentage, of the permanent partial disability resulting from the last injury only, and prove that the combination of the last injury and the pre-existing disabilities resulted in permanent total disability. *Id.*

Once the ALJ determined that Claimant sustained a permanent partial disability of forty-five percent of the whole body due to the April 6, 1999 back injury, Claimant only needed to establish that she had pre-existing permanent partial disabilities that when combined with her back injury rendered her permanently and totally disabled. Claimant was not required to distinguish among and assign percentages to each of her pre-existing disabilities. Accordingly, we find the Commission erred as a matter of law in determining that Claimant did not sustain her burden of proving SIF liability because Dr. Musich failed to assign percentage of disability to each separate pre-existing disability.

The Commission also concluded that Claimant failed to sustain her burden of proving SIF liability because Dr. Musich failed to distinguish between Claimant's pre–1999 cancer and her bout of cancer in 2000. Contrary to the ALJ's findings, the

---

2. All statutory references are to RSMo 2000.

record clearly reveals that Dr. Musich testified regarding the pre–1999 cancer as follows:

Q: Based upon this examination, did you develop an opinion based upon a reasonable degree of medical certainty concerning the relationship between the pre-existing conditions and the injury of 1999:

. . .

A: It's my medical opinion that Ms. Knisley suffered significant medical conditions *prior to 1999* which have included recurrent metastatic bilateral breast cancer, right carpal tunnel syndrome, mitral valve prolapse and significant depression and anxiety. It is my medical opinion that Ms. Knisley's medical conditions have resulted in chronic residual complaints as I have described earlier, and in my medical opinion have resulted in a permanent partial disability of thirty-five percent of the person as a whole secondary to the sequelae of metastatic breast cancer, carpal tunnel syndrome, cardiac mitral valve prolapse, and hypertension.

. . .

(emphasis added).

The Commission further determined that Claimant failed to prove SIF liability because the pre-existing disabilities included "hypertension controlled by medication and mitral valve prolapse for which no treatment is needed...." The record reveals that prior to the 1999 injury, Claimant underwent five surgeries related to her breast cancer (two lumpectomies, removal of twenty lymph nodes, a mastectomy and a breast reconstruction) two rounds of chemotherapy and radiation, and a right carpal tunnel release. The record also established that Claimant's blood pressure remained mildly elevated despite treatment with anti-hypertensive medication and that although treatment was not needed for her mitral valve prolapse, Claimant continued to suffer from hyperventilation and heart palpitations and visited the nurse's office while at work to calm down and rest. Again, neither the employer nor the SIF adduced contrary evidence.

■■■■ Acceptance or rejection of medical evidence is generally for the Commission. *Houston v. Roadway Express Inc.,* 133 S.W.3d 173, 179 (Mo.App. S.D. 2004). Moreover, the Commission is free to disbelieve uncontradicted and unimpeached testimony. *Id.* (citing *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d, 525, 527 (Mo. banc 1993)). However, where the record is devoid of conflicting evidence or testimony, the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses. *Id.* (quoting *Corp v. Joplin Cement Co.,* 337 S.W.2d 252, 258[6] (Mo.banc 1960)). The Commission may not disregard and ignore competent, substantial and undisputed evidence of witnesses who are not shown by the record to have been impeached. *Id.* In this case, the record does not provide any basis for refusing to credit the uncontradicted testimony of Dr. Musich and Claimant. Indeed, the Commission largely relied on Dr. Musich's testimony in reaching its own conclusions. Such conduct bespeaks the Commission's recognition and acceptance of Dr. Musich's evidence as credible, not a rejection thereof. *Id.*

■■■ Here, we find the Commission's conclusion that Claimant did not establish she had pre-existing disabilities significant enough to combine with the low back injury to implicate the SIF is not supported by competent and substantial evidence and is contrary to the overwhelming weight of the evidence. Both Dr. Musich and Mr.

England testified that Claimant is permanently and totally disabled due to a combination of pre-existing disabilities and the disability caused by the April 6, 1999 back injury. Dr. Musich testified that Claimant is totally and permanently disabled as a result of her present and past disabilities, her limited education, lack of transferable skills and her ongoing medical care and treatment.

Mr. England testified that Claimant is permanently and totally disabled due to a combination of her pre-existing problems, cancer and the physical effects of the cancer, continued depression and anxiety, upper extremity cramping with repetitive work, problems with handwriting and her April 1999 back injury. Mr. England believed that Claimant's pre-existing· conditions were a significant impediment to her employability, and affected her ability to compete for jobs prior to April 1999. In particular, her cancer and cancer treatments affected both her ability to compete for and sustain work. Her difficulty with writing and continued complaints after her right carpal tunnel release affected her ability to compete for employment, particularly jobs involving hand-intensive activities. Lastly, her psychological condition, including stress, depression, insomnia and suicidal tendencies prior to the April 9 back injury affected her ability to compete in the open labor market, particularly for jobs involving interaction with people or which might produce stress. There is no evidence in the record to refute Mr. England's testimony.

The Commission also determined that Claimant failed to sustain her burden of proving SIF liability because Mr. England did not elaborate "on the disability caused by the cancer and its effect on [her] employability." Similarly, the SIF argues on appeal that Claimant failed to prove that any of her pre-April 1999 disabilities rose to the level of a hindrance or obstacle to her employment prior to April 1999. Specifically, the SIF contends that there is no evidence any medical provider placed permanent restrictions on Claimant and no evidence that any of her disabilities caused any ongoing problems that interfered with her employment.

■ When determining SIF liability, the proper focus of the inquiry is "not on the extent to which the condition has caused difficulty in the past; it is on the *potential* that the condition may combine with a work-related injury in the future so as to cause a greater degree of disability than would have resulted in the absence of the condition." (emphasis in original). *Wuebbeling v. West County Drywall,* 898 S.W.2d 615, 620 (Mo.App. E.D.1995). In any event, the record establishes that Claimant missed considerable time from work prior to her April 1999 back injury due to carpal tunnel surgery, multiple surgeries related to her breast cancer and the chemotherapy and radiation which followed. Claimant testified that while at work she had to be careful with her arms due to scarring and swelling resulting from her cancer surgery and take breaks because of hyperventilation due to anxiety or mitral valve prolapse. Claimant testified she continues to have poor handwriting due to her carpal tunnel syndrome and at times loses her grip on objects. Claimant takes psychiatric medication for anxiety and depression, making factory work more dangerous. All of these conditions predated the April 9 back injury and according to the uncontradicted and unimpeached testimony of Mr. England, affected Claimant's ability to compete for jobs prior to April 1999.

Thus, the record establishes that Claimant's pre-existing conditions were a hindrance or obstacle to her employment and when combined with the April 9 work-

**638**

related injury, caused a greater degree of disability than would have resulted in the absence of the pre-existing conditions. Because the Commission's denial of SIF benefits was not warranted by substantial competent evidence in the record, we grant Claimant's point.

### Conclusion

Reversed and remanded to the Commission for entry of an award consistent with this opinion.

BOOKER T. SHAW, C.J., and NANNETTE A. BAKER, J., concur.