Debra K. HIGHLEY,
Appellant/Employee,

v.

VON WEISE GEAR, Employer,

and

State Treasurer, as custodian of
the Second Injury Fund.

No. ED 90160.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 4, 2008.

Richard Grossman, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Debra K. Highley ("Highley") appeals the award of the Labor and Industrial Relations Commission ("the commission") affirming the award of the administrative law judge ("ALJ") for permanent partial disability benefits against the Missouri State Treasurer, as custodian of the Second Injury Fund ("Second Injury Fund"). Highley claims the commission erred in affirming the award of the ALJ because the decision was not supported by substantial and competent evidence. We reverse and remand.

Highley worked for Von Weise Gear ("VWG") for approximately twenty-one years. VWG manufactured parts for motors. Highley initially worked for a short time as an operator, which entailed drilling holes in metal and polishing the metal; however, she primarily worked as a grinder during her employment with VWG. This required her to put parts through machines for grinding. Highley also worked setting up the grinding machines by adjusting the machines to accommodate different sized parts. She was later given a role in quality control for the grinding department. This position reduced the physical work required. Highley also trained other employees to run production of the grinders during her time at VWG. During her employment at VWG, Highley suffered several injuries. Ultimately, High-ley was diagnosed with carpal tunnel syndrome and from 1994 to 1996 she underwent seven corrective surgeries. Highley continued to work, with restrictions, after the surgeries. She was ultimately diagnosed with multiple sclerosis, and she was diagnosed with carpal tunnel and tarsal tunnel syndrome again in 2003. Highley stopped working for VWG in December 2003.

Highley filed a claim for compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation. Highley and VWG entered into a stipulation for compromise settlement. Highley received a lump sum payment of $18,220.13, which was reduced by attorney's fees and costs for a net settlement of $13,426.32. A hearing was subsequently held on Highley's claim against the Second Injury Fund, before an ALJ. The ALJ entered findings of fact and rulings of law, finding permanent partial disability in the amount of $30,401.58. The ALJ noted that it found in favor of the Second Injury Fund on the issue of liability for permanent and total disability, rendering the issue of the applicable rate for permanent and total disability moot. Highley filed an application for review with the commission. The commission found the ALJ's award was supported by substantial and competent evidence and affirmed the award. The present appeal followed.

Pursuant to section 287.495.1 RSMo (2000) [1], on appeal we may only modify, reverse, remand or set aside a commission's award if we find:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

---

1. All further statutory references are to RSMo (2000).

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ It is not necessary for us to view the evidence in the light most favorable to the commission's award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). Instead, we examine the record as a whole and determine whether there is "sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Id.* at 222–23. We make this determination considering the evidence in the context of the record in its entirety. *Id.*

■ Points one and two on appeal essentially raise the same claim of error. Each point argues that the commission's failure to find Highley permanently and totally disabled was not supported by substantial and competent evidence. In her first point on appeal, Highley claims the commission erred in failing to find permanent and total disability because the uncontradicted evidence was that she was permanently and totally disabled. In her second point, Highley argues the commission erred in finding she is able to work in the future based upon reference to a prior part-time job because such a finding was not supported by competent and substantial evidence.

■ Section 287.220 imposes liability upon the Second Injury Fund in certain cases of permanent disability where there has been a preexisting disability. The Second Injury Fund is to provide compensation to employees for that portion of the disability attributable to the preexisting condition. *Gassen v. Lienbengood,* 134 S.W.3d 75, 79 (Mo.App.2004) (citation omitted). The Second Injury Fund is liable where a claimant establishes either that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability, or the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone. *Id.;* (citing *Karoutzos v. Treasurer of State,* 55 S.W.3d 493, 498 (Mo.App.2001)). Whether the combination of injuries resulted in permanent and total disability is determined based upon the worker's ability to compete in the open labor market. *Knisley v. Charleswood Corp.,* 211 S.W.3d 629, 635 (Mo.App.2007) (citations omitted). "The primary determination is whether an employer can reasonably be expected to hire the employee, given his or her present physical condition, and reasonably expect the employee to successfully perform the work." *Id.*

Here, the commission predicated the Second Injury Fund's liability upon the finding that Highley's preexisting partial disability combined with her subsequent injury to create a greater disability than that which would have resulted from the last injury alone. However, the commission incorporated the ALJ's award in its final award, and found that the last injury, recurrent carpal tunnel syndrome, coupled with Highley's prior disabilities, did not cause her to become unemployable in the open labor market. Such a finding is not supported by competent and substantial evidence in the record.

The deposition of Robert Margolis, M.D., a neurologist, was admitted at the hearing. Dr. Margolis was asked to evaluate Highley. He examined Highley, obtained a history of her job activities, and reviewed her extensive medical history. Dr. Margolis concluded that Highley suffered from several preexisting conditions. These included bilateral carpal tunnel syndromes, bilateral cubital tunnel syn-

dromes, bilateral shoulder impingements, right ulnar nerve entrapment at the wrist, left medial epicondylitis, history of cervical strain/sprain, degenerative cervical disc disease, degenerative disease of the lumbar spine, and multiple sclerosis. According to Dr. Margolis, these preexisting conditions, combined with her primary work-related injury of bilateral carpal tunnel syndrome, occurring on December 16, 2003, to create a greater overall disability. Although Dr. Margolis stated he would defer to a vocational expert if the expert placed reasonable restrictions upon Highley's employment, he opined that Highley was permanently and totally disabled. Specifically, in his report Dr. Margolis stated it was his opinion that based on Highley's disabilities, "the average employer would not hire her in the normal course of doing business and therefore I consider her to be totally and completely disabled from all forms of employment."

The deposition of James England, Jr., a rehabilitation counselor, was also introduced at the hearing. In his role as a rehabilitation counselor, England evaluates and assists individuals with various impairments in determining whether the individuals are employable, and if so, what appropriate employment would be. Highley was referred to England for evaluation to determine whether or not she was employable in the open labor market. According to England, based upon his evaluation of Highley, which included evaluating her in person as well as a review of her vocational and medical history, Highley did not have any usable, transferable skills because of her impairments. He did note that prior to the last injury in 2003, Highley was capable of employment in the open labor market. However, after the last injury she could not return to work at VWG because of the need for repetitive use of her upper extremities, and she was no longer able to work in general on a consis-

tent, day-to-day basis. Although England acknowledged that some sedentary or light employment jobs were currently available with the types of restrictions recommended for Highley, he did not believe she could do sedentary work on a regular and sustained basis. In his report, England noted that someone with Highley's "level of fatigue who is not getting rest and who has difficulty with memory problems and who also has trouble using her upper extremities in normal fashion would not be, in my opinion, a good candidate for even sedentary work." He did not believe Highley was a good candidate for vocational rehabilitation and he opined that she was likely to "remain totally disabled from a vocational standpoint." According to England, Highley was unable to sustain work in the open labor market in any job.

The findings of the ALJ, incorporated by the commission, were that the opinions of the two expert witnesses testifying on behalf of Highley, Dr. Margolis and England, were flawed because they did not take into account Highley's full work history. Specifically, the findings referred to the fact that Highley worked two jobs within approximately a year prior to her last day of work for VWG. The commission also noted that Highley was working twelve-hour days with overtime prior to leaving work. As a result, the commission concluded that it was "impossible" to conclude the last injury combined with the prior disabilities caused Highley to become unemployable on the open labor market. This finding is in direct opposition to the unimpeached and uncontradicted expert testimony presented by Highley at the hearing before the ALJ.

The Second Injury Fund argues there are two separate standards with respect to credibility determinations and a reviewing court's deference to such findings. In *Copeland v. Thurman Stout, Inc.*, 204

S.W.3d 737, 743 (Mo.App.2006), the court discussed the two standards established by the Missouri Supreme Court in *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993) and *Corp. v. Joplin Cement Co.*, 337 S.W.2d 252, 258 (Mo. banc 1960). The *Copeland* court noted that in *Alexander*, the Supreme Court set forth the general rule that acceptance or rejection of medical evidence is for the commission. *Id.*; (citing *Alexander*, 851 S.W.2d at 527). The commission is free to disbelieve uncontradicted or unimpeached evidence. *Id.* However, in *Corp.*, the Supreme Court noted that where the evidence is uncontradicted or unimpeached, "the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses." *Id.*; (citing *Corp.*, 337 S.W.2d at 258). The court in *Copeland* noted that the rules set forth in *Alexander* and *Corp.* were not contradictory, but instead were compatible. *Id.* If there is an express declaration that the commission disbelieved uncontradicted or unimpeached testimony, then the rule set forth in *Alexander* applies. *Id.* If the record is silent concerning the commission's credibility determination, the *Corp.* rule applies. *Id.*

In *Copeland*, the court found the record was not silent on the issue of credibility. 204 S.W.3d at 744. The commission specifically resolved the differences in the evidence in favor of the testimony of particular medical experts, and the commission noted it found those medical professionals to be credible. *Id.* Thus, the *Alexander* rule applied, and the court determined that the commission was free to reject the testimony of other witnesses it did not feel were credible. *Id.*

The Second Injury Fund argues that similar to *Copeland*, here the record is not silent as to the credibility of the witnesses. According to the Second Injury Fund, the commission weighed the testimony of Dr. Margolis and England and found their conclusions not to be credible. As such, the commission was free to reject the uncontradicted and unimpeached testimony of the two witnesses. We disagree.

Here, the commission did not make a credibility determination regarding the testimony of Dr. Margolis and England. Instead, the commission merely stated that England's analysis was "flawed, to the extent that it fails to take into consideration the full work history of the claimant." The commission relied primarily upon Highley's deposition testimony regarding a part-time position managing a Taco Bell held by Highley approximately one year prior to ending her employment with VWG to reach its conclusion that she was not permanently and totally disabled. The commission stated neither Dr. Margolis nor England took this part-time position into account in reaching their conclusions; however, England testified he did review Highley's deposition testimony, and it did not change any of his opinions concerning her employability. The commission did not conclude it disbelieved England's testimony that he reviewed Highley's deposition testimony. Rather, the commission concluded England simply did not take the deposition testimony into consideration in determining that Highley was permanently and totally disabled. As a result, the *Corp.* rule applies, and we may find the award was not based upon disbelief of the testimony of the witnesses. *Copeland*, 204 S.W.3d at 743 (citations omitted). The commission may not arbitrarily disregard or ignore competent, substantial and undisputed evidence of witnesses who have not been impeached. *Id.* In addition, the commission may not base its finding upon conjecture or its own opinion unsupported by sufficient evidence. *Id.*

The commission did not find the testimony of the two witnesses not to be credible, but instead simply noted its belief that England's conclusion did not take into account Highley's full work history. The commission stated that neither Dr. Margolis nor England took Highley's part-time position into account in their conclusions; however, this is refuted by the record. England testified he did review Highley's deposition testimony, and it did not change any of his opinions concerning her employability, and Dr. Margolis testified he would defer to the opinion of a vocational expert within reasonable restrictions. As previously noted, England's unimpeached, uncontradicted testimony was that he reviewed Highley's deposition testimony and it did not change his opinion regarding her permanent and total disability. Thus, based upon the evidence in the record, the commission's finding that England did not take into account Highley's full work history was not supported by substantial and competent evidence.

Moreover, the proper focus of the inquiry in determining Second Injury Fund liability is not on the difficulties caused by the condition in the past, but rather on the potential that the condition may combine with a work-related injury in the future to cause a greater degree of disability than would have resulted absent the condition. *Knisley,* 211 S.W.3d at 637. The commission notes that neither Dr. Margolis nor England mentions Highley's history of having worked two jobs one year prior to her last work-related injury. However, whether Highley was capable of employment prior to the date of her last work-related injury is not conclusive as to her permanent and total disability. Instead, the proper focus is the undisputed evidence that Highley's numerous preexisting conditions, combined with the December 16, 2003, work-related injury, rendered her unemployable in the open labor market after the date of her last work-related injury, and thus, permanently and totally disabled. As a result, the commission's determination that Highley was not permanently and totally disabled was not supported by competent and substantial evidence in the record before us. Therefore, the commission erred in denying such benefits.

■ Finally, we address the Second Injury Fund's argument that if Highley is permanently and totally disabled it is because the last injury combines with a deteriorating condition, not because of the combination of the preexisting injuries and the last injury. The Second Injury Fund claims the conclusions of the ALJ as incorporated by the commission as well as the evidence in the record support such a determination. We disagree. The Second Injury Fund correctly notes it is not liable for the progression of a claimant's preexisting disability if such progression is not caused by the last work-related injury. *Garcia v. St. Louis County,* 916 S.W.2d 263, 266 (Mo.App.1995); (citing *Frazier v. Treasurer of Missouri as Custodian of Second Injury Fund,* 869 S.W.2d 152, 155 (Mo.App.1993)). Here, the commission references the argument of the Second Injury Fund that if Highley is unemployable it is because of the progressive deterioration of her condition since leaving employment with VWG. Such a conclusion is not supported by substantial and competent evidence in the record. There was evidence of the degenerative nature of multiple sclerosis, one of Highley's preexisting conditions. However, Dr. Margolis testified from the time of her last work-related injury in December 2003 until the date of his examination of Highley roughly two years later, there was no significant change in Highley's multiple sclerosis. Dr. Margolis's uncontradicted testimony was that Highley's multiple sclerosis actu-

ally remained "relatively stable" during that period of time. In addition, as previously noted his testimony was that Highley's preexisting injuries combined with her last work-related injury to render her permanently and totally disabled. Thus, any conclusion that Highley's permanent and total disability resulted merely from a progression of her preexisting disability not caused by the last work-related injury would not have been supported by competent and substantial evidence in the record before us, and the Second Injury Fund's argument in this regard fails.

In her third and final point, Highley argues the commission erred in failing to calculate her rate of compensation for permanent and total disability benefits pursuant to section 287.200. The commission noted that, "[a] finding in favor of the Second Injury Fund as to the issue of liability for permanent and total disability renders moot the issue as to the applicable rate for permanent and total disability." However, in light of our determination that the commission's denial of permanent and total disability benefits was against the weight of the evidence, we remand the cause for entry of an award calculated pursuant to section 287.200.

The decision of the commission is reversed and remanded with directions to the commission to enter a new award finding that Highley is permanently and totally disabled and that the Second Injury Fund is liable for the enhanced permanent and total disability.

ROY L. RICHTER, P.J., and GLENN A. NORTON, J., concur.