**Larry ABT, Appellant,**

v.

**MISSISSIPPI LIME COMPANY and Treasurer of Missouri as Custodian of the Second Injury Fund, Respondents.**

**No. ED 98282.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 11, 2012.

Robert J. Lenze, St. Louis, MO, for appellant.

Matthew M. Mocherman (Mississippi Lime Co.), Gregg N. Johnson (Second Injury Fund), Cape Girardeau, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Larry Abt (Claimant) appeals from the final award of the Labor and Industrial Relations Commission (Commission) denying him permanent total disability benefits from Mississippi Lime Company (Employer) [1] and the Second Injury Fund (Fund), awarding him permanent partial disability

---

1. Employer and its insurer, Federal Insurance Company (Insurer), filed a joint respondents' brief with this court. We will refer to Employer and Insurer collectively as "Employer."

benefits from Employer and the Fund,[2] and ordering Employer to reimburse Claimant for certain medical expenses. Claimant asserts that the Commission erred in: (1) denying him reimbursement of his 2005 and 2006 medical expenses; (2) rejecting the 2007 and 2010 reports of Dr. Robert Poetz; (3) rejecting the 2007 report of Wilbur Swearingin; and (4) finding that Claimant's permanent total disability resulted solely from a subsequent deterioration of his preexisting conditions.[3] We affirm in part, reverse in part, and remand.

### Factual and Procedural Background

On January 16, 2001, Claimant was using a locomotive to transport rail cars between a loading area and a rail yard. Consistent with his usual practice, Claimant was "standing on the side of" the locomotive while driving it and looking behind him to ensure that he did not derail. When Claimant looked forward, he observed a truck stopped in the locomotive's path on the railroad tracks. Claimant was unable to stop the locomotive before it collided with the truck. Claimant's body hit the truck before he "ended up on the ground." As a result of the accident, Claimant sustained a degloving injury[4] to his left calf that doctors repaired with surgery, injuries to his lower back, and fractured ribs (collectively, the "primary injury"). In May 2001, Claimant returned to work for Employer.

Claimant filed a claim for workers' compensation benefits in 2003, seeking "all compensation as provided in the Missouri Workers' Compensation Law, relating to [the primary injury]." In 2011, an Administrative Law Judge (ALJ) held a hearing on the claim. Claimant and Employer advised the ALJ that the claim involved three issues: (1) the "nature and extent of disability, permanent total disability versus permanent partial disability"; (2) the Fund's liability; and (3) Employer's liability for medical expenses Claimant incurred from Physicians Health and Rehab from 2002 through 2004, Ste. Genevieve County Memorial Hospital in 2005, Mid America Rehab in 2005, and Dr. Richard Pearson in 2005 and 2006.

### A. Claimant's Evidence

#### 1. Medical Records

At the hearing, Claimant introduced various medical records dated before and after the primary injury. In addition to records relating to the primary injury, Claimant introduced records concerning various 2005 injuries. According to the records, doctors administered the following tests to Claimant in 2005:

1) January 2005: thoracolumbar x-ray;

2) February 2005: x-ray of left ankle;

3) March 2005: MRI of right ankle;

4) April 2005: chest x-ray;

5) May 2005: x-ray of left hand and wrist;

6) October 2005: x-ray of right elbow, wrist, and hand; and

7) October 2005: x-rays of lumbar, thoracic, and cervical spine.

On October 23, 2005, Ste. Genevieve County Memorial Hospital admitted Claimant for approximately four or five days due to "left leg swelling problems."

---

**2.** This court dismissed the Fund's appeal for lack of a timely notice of appeal.

**3.** Claimant presented a fifth point on appeal in his initial brief but withdrew the point from consideration in his reply brief.

**4.** In a degloving injury, a section of skin is torn from the underlying tissue.

Doctors administered a bilateral "[D]oppler venous study" and diagnosed Claimant with left leg cellulitis and left lower leg lymphedema. Claimant introduced medical records and bills of Ste. Genevieve County Memorial Hospital for treatment of his left leg from October 23, 2005 to November 1, 2005, Mid America Rehab for occupational therapy for his left leg from November 1 to November 22, 2005, and Dr. Pearson for treatment of left leg swelling from October 23, 2005 to October 12, 2006.

### 2. Dr. Poetz's Reports and Deposition

Claimant introduced the written reports and deposition of Dr. Robert Poetz, an osteopathic physician and surgeon. Dr. Poetz examined Claimant in June 2004 and prepared a written report dated August 23, 2004. Dr. Poetz opined that the primary injury was "a substantial and contributing factor" to various PPDs, some of which were preexisting. Dr. Poetz recommended, among other things, that Claimant avoid "prolonged sitting, standing, walking, bending, stopping, twisting, squatting, climbing or kneeling[,] heavy lifting and strenuous activity."

Dr. Poetz examined Claimant in December 2006 and prepared a written report dated March 8, 2007. Dr. Poetz stated: "Since the patient's last evaluation he states he was working full duty; however his left leg continued to swell. He was hospitalized around October 2005 for lymphodema [sic] at Ste. Genevieve County Hospital and was treated with antibiotics." Dr. Poetz concluded: "[Claimant] is **Permanently and Totally Disabled** as a result of the combination of the [primary injury] and his pre-existing conditions. He is and will be permanently and totally unemployable in the open labor markets." (emphasis in original).

Dr. Poetz examined Claimant in August 2010 and prepared a written report dated October 7, 2010. Dr. Poetz stated that he had reviewed the medical records from Ste. Genevieve County Memorial Hospital. Dr. Poetz also reviewed the following 2005 records: thoracolumbar x-ray (January 2005); left foot and ankle x-ray (February 2005); right ankle MRI (March 2005); chest x-ray (April 2005); left hand and wrist x-ray (May 2005); lumbar, thoracic, and cervical spine x-rays (October 2005); right elbow, hand, and wrist x-ray (October 2005); and "bilateral venous Doppler" (October 2005). Dr. Poetz concluded: "[Claimant] remains **Permanently and Totally Disabled** as a result of the combination of the [primary injury] and his preexisting conditions. He is and will be permanently and totally unemployable in the open labor market." (emphasis in original).

In a 2010 deposition, Dr. Poetz testified that he did not refer to Claimant's 2005 injuries in his 2007 report and that he did not recall whether he was aware of the injuries at the time. Dr. Poetz testified that his opinion of Claimant's disability changed from his 2004 report to his 2007 and 2010 reports because "the longer he's having the disabilities, the worse the prognosis becomes."

### 3. Mr. Swearingin's Report and Deposition

Claimant introduced the written report and deposition of vocational rehabilitation counselor Wilbur Swearingin. Mr. Swearingin examined Claimant on April 18, 2006 and prepared a written report dated August 13, 2007. Mr. Swearingin stated that he reviewed several of Claimant's medical records from 1999 through 2003 and Dr. Poetz's 2004 and 2007 opinions. Mr. Swearingin reported:

> [Claimant] has massive swelling of his left lower leg, must keep it elevated and

utilize a lymphedema pump two to three times a day to control the swelling. As long as he is inactive, [Claimant's] back pain is manageable. Given the chronic swelling of [Claimant's] leg, his need to keep it elevated, and use a lymphedema pump, along with his chronic back pain, [Claimant] is neither placeable nor employable in the open labor market.

Mr. Swearingin opined that Claimant was permanently and totally disabled as a result of the primary injury "in isolation."

Mr. Swearingin testified in his 2010 deposition that he reviewed none of Claimant's post–2003 medical records. Mr. Swearingin stated that he was aware that Claimant was hospitalized in 2005 and that Claimant's primary care physician subsequently "took him off work."

## B. Employer's Evidence

### 1. Dr. Cadiz's Report

Employer introduced Dr. Briccio Cadiz's written report dated August 9, 2002. In the report, Dr. Cadiz stated that he reviewed "extensive records" of Claimant dated May 6, 1999 through January 10, 2002. Dr. Cadiz observed that Claimant's medical history "date[d] back to 1999 with bilateral leg swelling, left more than the right" and that Claimant "has a medical condition of venous insufficiency bilaterally." Dr. Cadiz reported: "The injury in January 2001 specifically having soft tissue swelling was an acute event on top of a chronic problem." In a report dated September 5, 2002, Dr. Cadiz stated that "[t]he acute insult from [Claimant's] injury in January 2001 has resolved."

### 2. Dr. Tate's Report

Employer introduced Dr. Sandra Tate's written report summarizing her opinion after she performed an independent medical examination of Claimant in 2009. In her report, Dr. Tate stated that "[Claimant's] pre-existing history of phlebitis and cellulits [sic] and lymphedema are definate [sic] contributing factors and are the primary reasons that he is off of work." Dr. Tate concluded that Claimant "is not permanently disabled due to his left lower extremity complaints."

### C. ALJ's Decision and Commission's Award

The ALJ made the following findings regarding Claimant's request for PTD benefits:

> I find the opinions of Mr. Swearingim [sic] and of Dr. Robert Poetz after August 23, 2004 to be not credible because they lack information and failed to review records concerning [Claimant's] injury to his left ankle in February 2005, left wrist problem in May 2005, neck problem in October 2005, right elbow and hand in October 2005, and left leg hospitalization in October of 2005. The record clearly supports a finding that [Claimant's] permanent total disability condition was a result of subsequent deterioration and not a result of [Claimant's] January 16, 2001 work injury. *I find the opinion of Dr. Robert Poetz dated August 23, 2004 to be the most credible and comprehensive based on the evidence.* Consequently, I find that all of the rest of the opinions that are inconsistent or contradict that opinion to be not credible. Based on my above findings, I find that [Claimant] has failed to meet his burden of proof regarding permanent total disability against [Employer] and [the Fund].

(emphasis added).

The ALJ found that Claimant had PPDs relating to the primary injury and directed Employer to pay Claimant PPD benefits. The ALJ determined that Claimant had five preexisting conditions resulting in

PPD, but that only the preexisting disability to Claimant's left wrist met the threshold for Fund liability. The ALJ directed the Fund to pay Claimant PPD benefits in the amount of $6,328.41.

In a section entitled "Applicable Law," the ALJ recited legal principles relating to an employer's obligation to provide medical treatment for a claimant. The ALJ stated that: (1) the employer has the right to select the treating physician; (2) the claimant may select his own physician at his own expense; and (3) the employer may waive its right to select the treating physician by failing or neglecting to provide necessary medical aid.

Addressing Claimant's request for payment of previously incurred medical expenses, the ALJ stated:

> These costs are alleged to be for treatment that [Claimant] received from Physicians Health and Rehab [2002–2004], Ste. Genevieve County Memorial Hospital [2005], Mid America Rehab [2005], and Dr. Richard Pearson [2005–2006]. [Employer] has disputed payment of these expenses based on causal relationship. Based on the evidence and my above findings, I find that the previously incurred medical expenses related to Ste. Genevieve County Memorial Hospital …, Mid America Rehab …, and Dr. Richard Pearson … are a result of subsequent deterioration and not related to [Claimant's] January 16, 2001 work related injury. Therefore, [Claimant's] request for previously incurred medical aid related to Ste. Genevieve County Memorial Hospital, Mid America Rehab, and Dr. Richard Pearson is denied.

The ALJ found that the expenses incurred from Physicians Health and Rehab were causally related to the primary injury and directed Employer to reimburse Claimant for those expenses.

Claimant appealed the ALJ's decision to the Commission, and the Commission issued a final award modifying the ALJ's decision. The Commission found that the ALJ improperly excluded from the calculation of Fund liability Claimant's preexisting disabilities that individually did not satisfy the minimum thresholds of section 287.220.1.[5] The Commission modified the decision by including all of Claimant's preexisting disabilities in the calculation of Fund liability and ordering the Fund to pay Claimant a total of $11,325.14 in PPD benefits. In all other respects, the Commission affirmed the ALJ's decision. Claimant appeals.

### Standard of Review

■■■ On appeal from a decision in a workers' compensation proceeding, this court may modify, reverse, remand for rehearing, or set aside the award upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Mo.Rev. Stat. § 287.495.1. We must consider the whole record to determine whether it contains sufficient, competent, and substantial evidence to support the award, and we will set aside the Commission's award only if it is contrary to the overwhelming weight of the evidence. *Miller v. Mo. Highway & Transp. Comm'n,* 287 S.W.3d 671, 672 (Mo. banc 2009). While we defer to the Commission on issues of fact, credibility of witnesses, and weight to be given conflicting evidence, we review the Commission's interpretations or applications of law without deference to the Commission's judg-

---

5.  All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

ment. *Hager v. Syberg's Westport,* 304 S.W.3d 771, 773 (Mo.App. E.D.2010). Under the Workers' Compensation Law in effect at the time of Claimant's primary injury, we resolve any doubt as to Claimant's right to compensation in favor of Claimant. *See Clark v. FAG Bearings Corp.,* 134 S.W.3d 730, 738 (Mo.App. S.D. 2004); Mo.Rev.Stat. § 287.800 (2000) (requiring liberal construction of Workers' Compensation Law).

### Discussion

Claimant asserts four points on appeal. We address these points out of order for ease of analysis. Additionally, we will consider Claimant's second and third points together because both points concern the Commission's rejection of expert opinions.

### A. Rejection of Expert Opinions

In his second point on appeal, Claimant argues that the Commission erred in finding that Dr. Poetz's 2007 and 2010 opinions were not credible on the ground that "the opinions . . . lack[ed] information and failed to review records" concerning Claimant's 2005 injuries and hospitalization. In his third point on appeal, Claimant asserts that the Commission erred in finding that Mr. Swearingin's 2007 opinion was not credible for the same reason. More specifically, Claimant contends that the evidence shows both Dr. Poetz and Mr. Swearingin were aware of and considered the relevant 2005 occurrences in formulating their opinions. Employer responds that competent and substantial evidence supports the Commission's credibility findings and that this court must defer to those findings.[6]

This court "defer[s] to the Commission on issues involving the credibility of witnesses and the weight to be given

testimony, and we acknowledge that the Commission may decide a case upon its disbelief of uncontradicted and unimpeached testimony." *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993) (quotation omitted), *superseded by statute on the grounds,* 2005 Mo. Legis. Serv. SB. 130, Mo.Rev.Stat. § 287.020.10. However, "where the record reveals no conflict in the evidence or impeachment of any witness, the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses." *Corp v. Joplin Cement Co.,* 337 S.W.2d 252, 258 (Mo. banc 1960). In such a case, "[t]he Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses *who are not shown by the record to have been impeached,* and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence." *Copeland v. Thurman Stout, Inc.,* 204 S.W.3d 737, 743 (Mo.App. S.D.2006) (emphasis in original).

The Commission found "the opinions of Mr. Swearingim [sic] and of Dr. Robert Poetz after August 23, 2004 to be not credible." Specifically, the Commission found those opinions not credible solely "because they lack information and failed to review records concerning [Claimant's] injury to his left ankle in February 2005, left wrist problem in May 2005, neck problem in October 2005, right elbow and hand in October 2005, and left leg hospitalization in October of 2005."

Claimant argues that the record demonstrates that, contrary to the Commission's findings, Dr. Poetz and Mr. Swearingin were aware of Claimant's 2005 medical history and reviewed the relevant records. Claimant therefore urges this court to ap-

---

6. The Fund presented no arguments in response to Claimant's Points I, II, and III.

ply the *Corp* rule and consequently conclude that substantial and competent evidence did not support the Commission's findings that Dr. Poetz and Mr. Swearingin were "not credible." In support of this argument, Claimant relies on *Highley v. Von Weise Gear*, 247 S.W.3d 52 (Mo.App. E.D.2008). In *Highley*, a vocational expert testified that he had reviewed the claimant's deposition testimony regarding her work history and it did not change his opinion concerning the claimant's employability. 247 S.W.3d at 57. Nonetheless, the Commission determined that the expert's analysis was "flawed, to the extent that it fail[ed] to take into consideration the full work history of the claimant." *Id.*

On appeal, the *Highley* court determined that the *Corp* rule applied because the Commission "did not conclude it disbelieved [the expert's] testimony that he reviewed [the claimant's] deposition testimony," which detailed her work history. *Id.* The court explained that the Commission did not find the expert not credible, but instead "simply noted its belief that [the expert's] conclusion did not take into account [the claimant's] full work history." *Id.* at 58. Because the expert's testimony revealed that he considered the claimant's work history in forming his opinion, the court concluded that the Commission's finding to the contrary was not supported by substantial and competent evidence. *Id.*

■ Here, as in *Highley*, the Commission rejected Dr. Poetz's 2007 and 2010 opinions and Mr. Swearingin's 2007 opinion solely because they allegedly failed to take into account information and review records concerning Claimant's 2005 injuries and hospitalization. The invocation of the word "credible" rather than the word "flawed" does not alter the fact that the ALJ's rejection of the 2007 and 2010 reports is, as in *Highley*, not rooted in disbelief (particularly where the ALJ expressly

relies on Dr. Poetz's 2004 opinion, finding it to be "the most credible and comprehensive" while rejecting Employer's experts) but is rather a criticism of the alleged failure to take into account Claimant's full medical history. Therefore, guided by *Highley*, we consider whether substantial and competent evidence supports the Commission's finding that Dr. Poetz and Mr. Swearingin lacked information and failed to review records concerning Claimant's 2005 injuries and hospitalization.

*1. Dr. Poetz's 2007 and 2010 opinions*

In Dr. Poetz's 2007 report, he addressed Claimant's 2005 hospitalization but not the 2005 injuries. Dr. Poetz stated in the report that "[Claimant] was hospitalized around October 2005 for lymphodema [sic] at Ste. Genevieve County Hospital and was treated with antibiotics." However, the report contains no mention of Claimant's 2005 injuries. Dr. Poetz testified in 2010 that he did not recall whether he was aware of those injuries at the time of his 2007 report. Thus, substantial and competent evidence supports the Commission's finding that in the 2007 report, Dr. Poetz "lack[ed] information and failed to review records concerning [Claimant's] injury to his left ankle in February 2005, left wrist problem in May 2005, neck problem in October 2005, [and] right elbow and hand in October 2005...."

■ However, Dr. Poetz's 2010 report reveals that at that time, he fully considered the 2005 hospitalization as well as the 2005 injuries. Dr. Poetz stated in his 2010 report that he reviewed the following 2005 records: thoracolumbar x-ray (January 2005); left foot and ankle x-ray (February 2005); right ankle MRI (March 2005); chest x-ray (April 2005); left hand and wrist x-ray (May 2005); lumbar, thoracic, and cervical spine x-rays (October 2005); right elbow, hand, and wrist x-ray (Octo-

ber 2005); and "bilateral venous Doppler" (October 2005). As his 2007 report makes clear, Dr. Poetz also knew about Claimant's October 2005 hospitalization for his left leg infection. This unimpeached evidence directly contradicts the Commission's finding that in 2010, Dr. Poetz "lack[ed] information and failed to review records concerning [Claimant's] injury to his left ankle in February 2005, left wrist problem in May 2005, neck problem in October 2005, right elbow and hand in October 2005, and left leg hospitalization in October of 2005."

Employer contends that Dr. Poetz's statement that "[Claimant] was hospitalized around October 2005 for lymphodema [sic] at Ste. Genevieve County Hospital and was treated with antibiotics" does not establish that Dr. Poetz reviewed the relevant medical records. Employer also asserts that Dr. Poetz's statement in his 2010 report that he reviewed the 2005 medical records was merely evidence of a "cursory review." Employer provides no basis for these conclusions and, in particular, cites no evidence demonstrating that Dr. Poetz's review of the records was, in fact, "cursory."

Employer also argues that because the Commission expressly found Dr. Poetz's 2010 opinion not credible, we must apply the *Alexander* rule. Because the Commission based its rejection of Dr. Poetz's 2010 opinion on its unsupported conclusion that Dr. Poetz failed to consider Claimant's entire medical history, we decline to apply the *Alexander* rule. We hold that the Commission's rejection of Dr. Poetz's 2010 opinion was not supported by competent and substantial evidence in the record before us. Point II is granted as to Dr. Poetz's 2010 opinion and denied as to Dr. Poetz's 2007 opinion.

### 2. *Mr. Swearingin's 2007 opinion*

Based on our review of Mr. Swearingin's report and deposition testimony, we find that he was aware of the 2005 hospitalization, but he had not reviewed Claimant's post–2003 medical records and was unaware of Claimant's numerous 2005 injuries. In his 2007 report, Mr. Swearingin stated that he reviewed Dr. Poetz's 2007 report, which contained a reference to Claimant's 2005 hospitalization. Mr. Swearingin testified that he knew Claimant was hospitalized in 2005 and that Claimant's primary care physician subsequently "took him off work." However, the record contains no evidence that he considered the 2005 injuries to Claimant's left ankle, left wrist, neck, and right elbow and hand. Mr. Swearingin acknowledged in his deposition that he reviewed none of Claimant's post–2003 medical records. These facts constitute substantial and competent evidence supporting the Commission's finding that Mr. Swearingin "lack[ed] information and failed to review records" regarding Claimant's 2005 injuries. Point III is denied.

### B. Cause of Claimant's Permanent Total Disability

In his fourth point on appeal, Claimant alleges that the Commission erred in denying him PTD benefits on the ground that his PTD resulted from subsequent deterioration of his preexisting conditions and not from the primary injury alone or in combination with his preexisting conditions. Specifically, Claimant argues that the Commission's finding was based upon conjecture because no medical expert testified that Claimant was permanently and totally disabled due solely to subsequent deterioration. Employer and the Fund counter that the following evidence supports the Commission's finding: (1) the opinions of Dr. Tate and Dr. Cadiz; and (2) the fact

that Claimant was able to continue working for four and a half years after his primary injury at a "heavy exertion level."

A claimant must offer medical testimony to establish that he is permanently and totally disabled as a result of the combination of a preexisting disability and the primary injury. *Michael v. Treasurer*, 334 S.W.3d 654, 665–66 (Mo.App. S.D.2011). Additionally, "[t]otal disability preventing reasonable employment must be more than post-accident worsening of preexisting disabilities." *Id.* at 666 (quotation omitted). "Upon a claim for permanent total disability, the claimant must show that the worsening was caused or aggravated by the primary injury." *Id.* (quotation omitted). "We will affirm the Commission's choice between conflicting medical opinions if it is supported by competent and substantial evidence." *Dwyer v. Fed. Express Corp.*, 353 S.W.3d 392, 395 (Mo.App. S.D.2011).

Claimant and Employer presented conflicting medical opinions regarding the cause of Claimant's disability. Claimant offered the opinions of Dr. Poetz to support his argument that the combination of his preexisting disabilities and the primary injury caused his PTD. In his 2007 and 2010 reports, Dr. Poetz stated that Claimant was permanently and totally disabled "as a result of the combination of the [primary injury] and his pre-existing conditions." Dr. Poetz testified that although he concluded in 2004 that Claimant suffered only permanent partial disabilities, his opinion had changed because "the longer he's having the disabilities, the worse the prognosis becomes."

In response, Employer offered the opinions of Drs. Cadiz and Tate to support its argument that Claimant's disability resulted from his preexisting conditions rather than the primary injury. Dr. Cadiz stated that the primary injury was "an acute event on top of a chronic problem" of "venous insufficiency bilaterally" and bilateral leg swelling. Dr. Cadiz also reported that by September 2002, "[t]he acute insult from [Claimant's] injury in January 2001[had] resolved." In Dr. Tate's 2009 report, she opined that Claimant was "not permanently disabled due to his left lower extremity complaints" and that his "pre-existing history of phlebitis and cellulits [sic] and lymphedema are definate [sic] contributing factors and are the primary reasons that he is off of work."

Significantly, none of the foregoing medical experts concluded that Claimant was permanently and totally disabled solely because of subsequent deterioration of Claimant's preexisting disabilities. Nonetheless, the Commission stated: "The record clearly supports a finding that [Claimant's] permanent total disability condition was a result of subsequent deterioration and not a result of [Claimant's] January 16, 2001 work injury." Rather than choosing one of the medical opinions, the Commission made a finding that is not consistent with any medical opinion in the record. Because no medical expert concluded that Claimant was permanently and totally disabled due solely to subsequent deterioration, the Commission's finding is not supported by substantial and competent evidence. *See, e.g., Angus v. Second Injury Fund*, 328 S.W.3d 294, 302 (Mo.App. W.D.2010) (holding that the Commission's award was not supported by substantial and competent evidence where no expert medical testimony supported the Commission's conclusion as to medical causation of the claimant's PTD); *Van Winkle v. Lewellens Prof'l Cleaning, Inc.*, 258 S.W.3d 889, 898 (Mo.App. W.D.2008).

Employer and the Fund maintain that substantial and competent evidence supports the Commission's finding that subsequent deterioration caused Claimant's

PTD because, after Claimant's primary injury, he returned to work for four and a half years at a "heavy exertion level." However, the Commission neither relied on nor even mentioned Claimant's work history in concluding that subsequent deterioration caused Claimant's PTD. Moreover, the fact that Claimant continued to work does not constitute medical testimony as to the cause of Claimant's PTD. *See Michael*, 334 S.W.3d at 665–66; *Angus*, 328 S.W.3d at 302.

Dr. Poetz concluded in his 2010 report that Claimant's PTD resulted from a combination of the primary injury and his preexisting conditions. Although the Commission rejected Dr. Poetz's 2010 opinion on the basis that he failed to consider the 2005 medical problems, we have determined that the Commission's rejection of Dr. Poetz's opinion was not supported by competent and substantial evidence. *See supra* Point II. Accordingly, we hold that the Commission erred in attributing Claimant's PTD solely to subsequent deterioration. Point granted.

### C. Reimbursement of Past Medical Expenses

In his first point on appeal, Claimant asserts that the Commission erred in denying him reimbursement of medical expenses he incurred in 2005 and 2006 from Ste. Genevieve County Memorial Hospital, Mid America Rehab, and Dr. Pearson. Specifically, Claimant alleges that his testimony established that the medical expenses were related to his primary injury and Employer failed to make a showing to the contrary. Employer counters that no medical evidence established a relationship between the treatment and Claimant's primary injury or, alternatively, that Employer did not authorize the treatment.

■ "Section 287.460.1 mandates that an award in a contested workers' compen-

sation case be accompanied by findings of fact and conclusions of law." *Stegman v. Grand River Reg'l Ambulance Dist.*, 274 S.W.3d 529, 533 (Mo.App. W.D.2008). "The Missouri Supreme Court has declared that such statutory requirements contemplate an unequivocal affirmative finding as to what the pertinent facts are." *Id.* (quotation omitted). "The factual findings are necessary so that we can know what a decision means before the duty becomes ours to say whether it is right or wrong." *Id.* at 534 (quotation omitted).

■ "The findings should be designed to show whether the basis of the decision was an issue of fact or a question of law." *Id.* "Without factual findings, it can be very difficult to ascertain why the Commission ruled as it did so that we can perform our duty of review under section 287.495." *Id.* "Although detailed summaries of the facts are not required in an agency's order and report, the findings should be sufficient to demonstrate how the controlling issues have been decided." *Carver v. Delta Innovative Services*, 379 S.W.3d 865, 870 (Mo.App. W.D.2012) (quotation omitted).

■ The Commission based its denial of reimbursement of the 2005 and 2006 medical expenses in part on certain findings that are not supported by substantial and competent evidence. In denying Claimant's request for reimbursement of the 2005 and 2006 expenses, the Commission stated:

These costs are alleged to be for treatment that [Claimant] received from … Ste. Genevieve County Memorial Hospital [2005], Mid America Rehab [2005], and Dr. Richard Pearson [2005–2006]. [Employer] has disputed payment of these expenses based on causal relationship. Based on the evidence *and my above findings*, I find that the previously

incurred medical expenses related to Ste. Genevieve County Memorial Hospital ..., Mid America Rehab ..., and Dr. Richard Pearson ... are a result of subsequent deterioration and not related to [Claimant's] January 16, 2001 work related injury.

(emphasis added). The "above findings" included the Commission's rejection of Dr. Poetz's 2010 opinion and the Commission's finding that Claimant's PTD resulted solely from subsequent deterioration of his preexisting conditions. We have determined that the Commission erred in making both of these findings. *See supra* Points II and IV.

Although the Commission stated that it relied on "the evidence" and its "above findings," it did not specify what evidence it found persuasive or which findings were controlling in its denial of Claimant's request for reimbursement. Without· such information, and particularly without knowing whether the Commission based its decision on findings we have held were erroneous, we cannot meaningfully determine whether the Commission's conclusion was supported by substantial and competent evidence. Accordingly, we must remand the case to the Commission for entry of more specific findings as to the facts necessary to support the Commission's conclusion. *See Carver*, 379 S.W.3d at 871–72 (remanding where the appellate court was unable to determine whether the Commission's conclusion was supported by substantial and competent evidence because the Commission failed to make explicit factual findings supporting its conclusion); *Stegman*, 274 S.W.3d at 536.

Employer argues on appeal that it is not required to reimburse Claimant for the 2005 and 2006 medical expenses because Claimant did not request the treatment and Employer did not authorize it. In response, Claimant maintains that Employer waived its right to authorize or direct Claimant's medical treatment when it refused to provide the treatment.

It appears from the record before us that the parties presented these arguments to the Commission. In a section entitled "Applicable Law" in the final award, the Commission stated that: (1) the employer has the right to select the treating physician; (2) the claimant may select his own physician at his own expense; and (3) the employer may waive its right to select the treating physician by failing or neglecting to provide necessary medical aid. Thus, the issues were at least implicitly before the Commission. *See Long v. City of Hannibal*, 670 S.W.2d 567, 570 (Mo.App. E.D.1984).

However, the Commission never addressed Employer's argument that Claimant did not request the treatment and Employer did not authorize it or Claimant's argument that Employer waived its right to authorize the treatment. In its discussion of Claimant's request for reimbursement of medical expenses, the Commission mentioned only Employer's contention that the expenses were not causally related to Claimant's primary injury. The Commission made no findings as to whether Claimant requested the treatment or Employer refused to provide it. Without specific findings on these issues, we are unable to address these arguments, which remain open for consideration on remand. *See Stegman*, 274 S.W.3d at 536 ("The Claimant's arguments are interesting, but we cannot deal with them effectively without understanding the pertinent facts the Commission found were part of this employment."); *Carver*, 379 S.W.3d at 871–72. Point granted.

### Conclusion

We affirm the Commission's findings as to Dr. Poetz's 2007 opinion and Mr. Swear-

ingin's 2007 opinion. We reverse the Commission's determinations that: (1) Dr. Poetz's 2010 report did not consider Claimant's 2005 medical history; (2) subsequent deterioration of the preexisting disabilities solely accounted for Claimant's permanent total disability; and (3) Claimant was not entitled to reimbursement of the 2005 and 2006 medical expenses. We remand for a reconsideration of the award in light of this opinion.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.